COMMONWEALTH *vs.* DAVID B. HARRIS.

Suffolk.  May 14, 1980. — January 16, 1981.

Present: HALE, C.J., GOODMAN, & GREANEY, JJ.

*Arrest. Constitutional Law,* Admissions and confessions, Waiver of con-
stitutional rights. *Identification. Practice, Criminal,* Argument by
prosecutor, Assistance of counsel.

A warrantless arrest of a defendant made by police officers outside of their
territorial jurisdiction was valid where the officers had probable cause
to believe that a felony had been committed and that the defendant
had committed it.  [168-172]

Despite a defendant's limited intelligence and education and despite his
failure to explicitly waive his Miranda rights prior to making state-
ments to the police, a knowing and intelligent waiver of those rights
could be inferred from evidence that the defendant affirmatively ac-
knowledged his understanding of the Miranda warnings; that at the
time he made the statements he appeared normal, was not especially
nervous, and answered questions in a cooperative manner; and that
there was no significant time lapse between the time the warnings
were given and understood and the time the statements were made.
[172-174]

At a rape trial, there was sufficient evidence to warrant a finding that an
encounter between the defendant and the victim at the police station
where the defendant was being questioned was entirely accidental,
and there was no error in the judge's denial of the defendant's motion
to suppress the identification made by the victim at the station house.
[174-175]

Certain remarks by a prosecutor during his summation, which were an
improper attempt to arouse jury sympathy and prejudice, were not so
prejudicial to the defendant as to create a substantial risk of a miscar-
riage of justice.  [176-177]

The record of a rape trial did not support the defendant's contention that
he was denied effective assistance of counsel in his representation by an
attorney who had only recently been admitted to practice and who
had not previously tried a criminal case in the Superior Court.
[177-178]

INDICTMENTS found and returned in the Superior Court on April 8, 1975.

The cases were tried before *Morse*, J., and a motion for a new trial was heard by him.

*Stephen Hrones* for the defendant.

*William R. Wilson*, Legal Assistant to the District Attorney (*Michael J. Traft*, Assistant District Attorney, with him) for the Commonwealth.

GREANEY, J.   On August 15, 1975, a Superior Court jury convicted the defendant on indictments charging three counts of rape of a child (G. L. c. 265, § 23), and he was sentenced to concurrent terms at the Massachusetts Correctional Institution at Walpole.   No appeal was taken from the judgments of conviction.   On August 10, 1977, the defendant filed a petition for writ of error in the Supreme Judicial Court alleging that he had been denied the effective assistance of counsel.   That court referred the matter to a special master, and on March 16, 1979, adopted the master's recommendation that the defendant's appellate rights be fully reinstated. On June 27, 1979, the defendant filed a motion for a new trial on the ground of ineffective assistance of counsel.   That motion was heard by the trial judge and denied on November 2, 1979.   The defendant appeals from errors assigned in connection with the trial and from the denial of the motion for a new trial.   These appeals raise the following questions: (1) whether the defendant's warrantless arrest in Chelsea by the Revere police was valid; (2) whether certain incriminating information was obtained from the defendant in violation of his Miranda rights; (3) whether an out-of-court identification made by the victim at the police station should have been suppressed; (4) whether a new trial is required because of alleged prejudicial final argument by the prosecutor; and (5) whether the defendant was effectively represented by his trial counsel.[1]   We find no error.

The evidence pertinent to a resolution of the questions may be summarized as follows.   The rapes occurred on Feb-

---

[1] The defendant is represented by new counsel on this appeal.

ruary 26, 1975. The victim, an eleven year old girl, had just completed dancing lessons in Chelsea and was on her way home to Revere. She boarded a bus in front of the dance school at 6:50 P.M. There were approximately six to eight people aboard the bus, including the defendant, who continually stared at the victim. She got off the bus about twenty minutes later and started to walk home. The defendant, who had alighted from the bus at the previous stop, was now following her on the opposite side of the street. She started to walk faster and noticed that the defendant was running toward her. To reach home quickly, she cut through a parking lot and a grassy area, but the defendant caught up to her in the back of the lot, grabbed her and threw her down onto the grassy area. There, he forced her to engage in natural and unnatural acts of sexual intercourse. The entire incident lasted approximately one and one-half hours. She immediately went home, told her father about the incident, and described her assailant as five feet, eleven inches in height, 150 pounds with long brown hair parted in the middle, two to four upper teeth missing, a black left eye which was bloodshot, and wearing brown corduroy slacks and a jacket. Her father called the Revere police, who came to the home, at which time she repeated her description. The victim was then taken to the hospital for an examination and later drew a sketch of her attacker before going to bed.

In the meantime, her father had called his brother-in-law, John Parker, about the incident and given him the description. Parker lived in Chelsea. The father spent the next day searching for the assailant but without success. That night at approximately 11:00 P.M. Parker noticed the defendant waiting for a bus in Chelsea. Upon observing that he met the description, Parker offered the defendant a ride, which the defendant accepted. Parker convinced the defendant to go to Parker's home and invited him in for a beer. There, Parker called the victim's father, who in turn notified the Revere Police. The police quickly picked up the father and proceeded directly to Parker's house in Chel-

sea. Upon approaching the house, the officers observed the defendant and Parker coming out the front door. Noticing that the defendant fitted the description given by the victim, the officers placed him under arrest and advised him of his Miranda rights. The officers then brought the defendant back to the police station in Revere while the victim's father, Parker, and Parker's wife went to pick up the victim. The victim was told that the police had apprehended a man who fit the description. Unknown to the officers who had arrested the defendant and who were questioning him at the station, the victim and her party arrived and were placed in a room by a stairway. The officers, after completing their questioning, proceeded down the stairway in order to take the defendant back to his cell. The victim, who had left the room to get a drink of water, noticed the defendant coming down the stairs and immediately cried out: "Daddy, that's him over there." This identification was introduced at trial and an in-court identification was made. The defense was based on evidence of alibi.

1. *Validity of the arrest.* The defendant contends that his warrantless arrest in Chelsea by the Revere police was effectuated without authority, and, as a consequence, that all statements and evidence obtained pursuant thereto should have been excluded at the trial on an application of the fruit of the poisonous tree doctrine. See *Wong Sun* v. *United States*, 371 U.S. 471, 488 (1963). See generally *United States* v. *Crews*, 445 U.S. 463, 468-470 (1980).

In Massachusetts a police officer may make a warrantless arrest of any person who he reasonably believes has committed a felony. *Commonwealth* v. *Holmes*, 344 Mass. 524, 525 (1962). The officer's official authority to make such a warrantless arrest, however, is limited to the territorial jurisdiction of his appointment (Rep. A.G., Pub. Doc. No. 12, at 136 [1967]; Smith, Criminal Practice and Procedure § 103 [1970]), unless the officer is "on fresh and continued pursuit" of a felon "for any offence committed in his presence within his jurisdiction" (G. L. c. 41, § 98A, inserted by St. 1967, c. 263) — a situation which has no ap-

plicability to this case. Apart from this statutory exception, Massachusetts has yet to determine when a police officer may make a valid warrantless felony arrest outside of his jurisdiction.[2] We now turn to that question.

An extensive line of cases from other States upholds the validity of an extraterritorial arrest made by a police officer who lacked the official authority to arrest where the place of arrest authorizes a private person to make a "citizen's arrest" under the same circumstances. *State* v. *McCullar*, 110 Ariz. 427, 428 (1974). *People* v. *Monson*, 28 Cal. App. 3d 935, 939-940 (1972). *State* v. *Shipman*, 370 So. 2d 1195, 1196 (Fla. Dist. Ct. App. 1979). *State* v. *O'Kelly*, 211 N.W. 2d 589, 595 (Iowa 1973), cert. denied, 417 U.S. 936 (1974). *State* v. *Shienle*, 218 Kan. 637, 640 (1976). *State* v. *Jones*, 263 La. 164, 174-175 (1972). *Stevenson* v. *State*, 287 Md. 504, 510 (1980). *People* v. *Bashans*, 80 Mich. App. 702, 713 (1978). *State* v. *Fritz*, 490 S.W. 2d 30, 32 (Mo.), cert. denied, 411 U.S. 985 (1973). *State* v. *McCarthy*, 123 N.J. Super. 513, 517 (1973). *State* v. *MacDonald*,     S.D.      , (1977) (260 N.W. 2d 626, 627 [S.D. 1977]). *State* v. *Harp*, 13 Wash. App. 239, 242 (1975). To the same effect are several Federal cases.[3] As aptly expressed in *State* v. *O'Kelly*, *supra* at 595: "When the . . . officers came to [the adjoin-

---

[2] The only recent case concerning an extraterritorial arrest is *Commonwealth* v. *Mottola*, 10 Mass. App. Ct. 775 (1980) . This decision held that a police officer of the Massachusetts Bay Transportation Authority (MBTA) had the power to make an arrest outside of MBTA property by virtue of St. 1968, c. 664, which confers on MBTA officers the powers and duties given to police officers of cities and towns under G. L. c. 41, § 98. *Id.* at 779-781 . Since the result depended on a statutory basis for the arrest, it does not apply here.

[3] See *Ward* v. *United States*, 316 F.2d 113, 116-118 (9th Cir.), cert. denied, 375 U.S. 862 (1963) (warrantless arrest by postal inspectors, who lacked power to arrest under Federal law, held valid as an arrest by private persons under California law); *United States* v. *DeCatur*, 430 F.2d 365, 367 (9th Cir. 1970) (dicta); *United States* v. *Swarovski*, 557 F.2d 40, 46-47 (2d Cir. 1977), cert. denied, 434 U.S. 1045 (1978) (arrest by Customs Service agents, who are not empowered to arrest by Federal law, held valid as a citizen's arrest under New York law).

ing jurisdiction], they ceased to be officers but they did not cease to be persons." In Massachusetts a private person may lawfully arrest someone who has in fact committed a felony. *Commonwealth* v. *Lussier,* 333 Mass. 83, 92 (1955). The stricter requirement for a citizen's arrest — that the person arrested be shown in fact to have committed a felony — is designed to discourage such arrests and to prevent "the dangers of uncontrolled vigilantism and anarchistic actions." *Commonwealth* v. *Klein,* 372 Mass. 823, 829 (1977). Cf. *Commonwealth* v. *Mahnke,* 368 Mass. 662, 688-689 (1975), cert. denied, 425 U.S. 959 (1976). See also *Rohan* v. *Sawin,* 5 Cush. 281, 285 (1851); *Commonwealth* v. *Carey,* 12 Cush. 246, 251 (1853); *Commonwealth* v. *Walden,* 380 Mass. 724, 728 n.2 (1980); Note, Arrest Without a Warrant in New England, 40 B.U.L. Rev. 58, 76 (1960). Generally, the person arrested must be convicted of a felony before the "in fact committed" element is satisfied and the arrest validated. If the citizen is in error in making the arrest, he may be liable in tort for false arrest or false imprisonment. See *Rohan* v. *Sawin,* 5 Cush. at 285; *Morley* v. *Chase,* 143 Mass. 396, 398 (1887); *Jacques* v. *Childs Dining Hall Co.,* 244 Mass. 438, 440-441 (1923); *Pilos* v. *First Natl. Stores, Inc.,* 319 Mass. 475, 478 (1946).

As a practical matter, the "in fact committed" requirement cannot be met when the propriety of a citizen's arrest is questioned on a motion to suppress[4] because there has been no validating conviction.[5] The obvious purpose of

---

[4] Although the Fourth Amendment does not apply to private persons, it would exclude evidence if the citizen's arrest was made under such circumstances as would make the citizen an instrumentality or agent of the police. See *Commonwealth* v. *Mahnke,* 368 Mass. at 677. See also *Coolidge* v. *New Hampshire,* 403 U.S. 443, 487-490 (1971); *United States* v. *Seidlitz,* 589 F. 2d 152, 158-159 (4th Cir. 1978), cert. denied, 441 U.S. 922 (1979); *Smith* v. *State,* 258 Ind. 594, 597-598 (1972); *People* v. *Horman,* 22 N.Y. 2d 378, 382 (1968), cert. denied, 393 U.S. 1057 (1969). It would also apply to cases such as this, where the police conduct is examined from the standpoint of a citizen's arrest.

[5] This has caused considerable confusion in the cases on the subject and has been styled as a problem of circularity. It is usually expressed in terms

that requirement is to deter private citizens from irresponsible action by exposing them to possible civil liability if it turns out later that the arrested party was innocent. Since the requirement is not designed to frustrate legitimate law enforcement activities, insistence on rigid compliance with the rule would be senseless in the circumstances present here. No one can seriously question the fact that the Revere police acted responsibly and that taking the time to arrange an arrest with the Chelsea police might have permitted the defendant to escape. "If in cases like this an officer, who must necessarily act with more or less haste in order to prevent a possible felon from making his escape, would have to satisfy himself beyond question that a felony had been committed or must act at his peril, the great public necessity for a prompt . . . enforcement of the law would be largely curtailed." *Grau* v. *Forge,* 183 Ky. 521, 528 (1919). We believe it to be sounder analysis to uphold the arrest, even though technically a citizen's arrest, made by the police officers in this case[6] if the evidence introduced on the motion to

---

of two questions: (1) At the pretrial stage how can it be said that the person arrested in fact committed a felony? (2) If the arrest is invalid, can the jury be permitted to convict based on evidence offered pursuant thereto? See the dissenting opinion of Burke, J., in *People* v. *Caliente,* 12 N.Y. 2d 89, 97 (1962). Not surprisingly, the cases have veered off in several directions in attempting to solve the problem. See *State* v. *McCullar,* 110 Ariz. at 428-429; *People* v. *Monson,* 28 Cal. App. 3d 935 (1972); *State* v. *Shipman,* 370 So. 2d at 1196-1197 — all jurisdictions which examine the entire record at the appellate level to see if the evidence established that a felony had been committed; *State* v. *Jones,* 263 La. at 172, 175 — a jurisdiction which looks to what was proven at trial to satisfy the "in fact committed requirement"; *People* v. *Aldapa,* 17 Cal. App. 3d 184, 188 (1971) — where the court looked to the facts available at the time of arrest; and *Stevenson* v. *State,* 287 Md. at 508-509, 521 — where a private citizen was held to have the right to make a felony arrest solely based on probable cause to believe that a felony had been committed by the defendant.

[6] We leave intact the rule that a citizen may lawfully arrest only when the person arrested has in fact committed a felony. We express no opinion on the right of a police officer to make an extraterritorial arrest apart from preventing a felon's possible escape or apart from the existence of a

suppress establishes that the police had probable cause to believe that a felony had been committed and that the person arrested had committed it. See *People* v. *Wilkins,* 27 Cal. App. 3d 763, 770 (1972); *People* v. *Marino,* 80 Ill. App. 3d 657, 661, 663-665 (1980); *Dodson* v. *State,* 269 Ind. 380, 382 (1978); *Stevenson* v. *State,* 287 Md. at 520; *Nash* v. *State,* 207 So. 2d 104, 106-107 (Miss. 1968). Compare *State* v. *Cohen,* 73 N.J. 331, 344-345 (1977). See also Bassiouni, Citizen's Arrest 17-22, 27 (1977). It is clear that these requirements were met in this case.[7]

2. *Miranda issues.* The defendant was read his Miranda rights when arrested in Chelsea and indicated that he understood them. He replied to a police officer's question at the scene of the arrest as to where he had been the previous evening with the answer that "he was on a drunk." This response was introduced at trial. Thereafter, the defendant was taken to the police station in Revere, where he was informed of the charges against him, again advised of his Miranda rights, and given the opportunity to use the telephone. While in the station, about one hour later, he stated in response to an officer's question that his undershorts were the same ones he wore the previous evening. This answer was admitted at trial, together with a chemical analysis of the shorts which showed traces of seminal fluid in the crotch area. The defendant contends that both statements should

statutory basis to arrest. We seriously doubt that the average police officer who finds himself in another jurisdiction will engage in independent investigation of a crime. We note that some departments have taken the precaution of having their officers, where practical, sworn in as special officers on the police forces of neighboring cities and towns in order to validate extraterritorial arrests where necessary.

[7] Accordingly, we reject the cases brought to our attention by the defendant which hold that an arrest made by a police officer under an assertion of official authority outside of his jurisdiction is per se invalid and cannot be justified under the guise of a citizen's arrest. See *State* v. *Cohen,* 139 N.J. Super. 561 (1976), modified, 73 N.J. 331 (1977); *Commonwealth* v. *Troutman,* 223 Pa. Super. 509 (1973); *Commonwealth* v. *Harrington,* 69 Pa. D. & C. 2d 336 (1975).

have been excluded because he did not explicitly waive his rights.

"[I]f the record demonstrates that a defendant has been clearly and accurately told of the Miranda rights and that he has affirmatively acknowledged his understanding of those rights, a knowing and intelligent waiver of those rights may be inferred, in circumstances not otherwise casting doubt on voluntary waiver." *Commonwealth* v. *Johnson,* 3 Mass. App. Ct. 226, 230 (1975), and cases cited. *Commonwealth* v. *Roy,* 2 Mass. App. Ct. 14, 19-20 (1974). *Commonwealth* v. *White,* 9 Mass. App. Ct. 839, 840 (1980). *Commonwealth* v. *Collins,* 9 Mass. App. Ct. 915 (1980). Explicit statements that the defendant understood his rights and waived them are not essential. *Commonwealth* v. *Valliere,* 366 Mass. 479, 487 (1974). *Commonwealth* v. *Williams,* 378 Mass. 217, 226 n.7 (1979). *Commonwealth* v. *Monteririo,* 4 Mass. App. Ct. 349, 351 (1976). See *North Carolina* v. *Butler,* 441 U.S. 369, 373 (1979). The defendant directs our attention to evidence that he was "on the slow side" and that he had only advanced to the ninth grade. An effective waiver, however, is not necessarily precluded by a defendant's limited education and intellectual ability. *Commonwealth* v. *Daniels,* 366 Mass. 601, 607 (1975). *Commonwealth* v. *Davis,* 380 Mass. 1, 6 (1980). *Commonwealth* v. *Taylor,* 9 Mass. App. Ct. 827, 827-828 (1980). A defendant's understanding of his Miranda rights may be inferred in the absence of evidence of coercion, duress, drunkenness, drug influence, or mental incompetency, which would have led the officer to proceed with greater caution. *Commonwealth* v. *Garcia,* 379 Mass. 422, 429-430 (1980). There was no such evidence here. Indeed, according to the police officer's testimony, the defendant appeared normal, was not especially nervous, and answered questions in a cooperative manner. See *Commonwealth* v. *Williams,* 378 Mass. at 225-226. This is not a case "where the police should have discerned from the defendant's conduct . . . that the defendant was incapable of making a knowing and intelligent waiver." *Common-*

*wealth* v. *Taylor,* 9 Mass. App. Ct. at 828. Contrast *Commonwealth* v. *Hosey,* 368 Mass. 571, 575-579 (1975).

As to the admission made at the police station, there was no evidence that the defendant had separately waived his rights at the time of booking. It is clear that "Miranda warnings, once given, are not to be accorded unlimited efficacy or perpetuity." *Commonwealth* v. *Cruz,* 373 Mass. 676, 687 (1977), citing *United States* v. *Hopkins,* 433 F. 2d 1041, 1045 (5th Cir. 1970), cert. denied, 401 U.S. 1013 (1971). The question in each case is: "Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?" *Commonwealth* v. *Cruz,* 373 Mass. at 687, citing *Miller* v. *United States,* 396 F.2d 492, 496 (8th Cir. 1968), cert. denied, 393 U.S. 1031 (1969). Where there is no significant time lapse, warnings given and understood prior to arrival at a police station will support a waiver of rights at the police station. *Commonwealth* v. *Valliere,* 366 Mass. at 487 (Miranda warnings given at the defendant's home sufficient to support waiver two hours later at the police station). *Evans* v. *Swenson,* 455 F.2d 291, 296 (8th Cir.), cert. denied, 408 U.S. 929 (1972) (warnings given to the defendant at the hospital were sufficient to support waiver at the police station later that same morning). The defendant gave his statement at the police station less than one and one-half hours after the initial Miranda warnings (and after being readvised of his rights at the time of booking). We are satisfied that the defendant fully understood his rights and that he had waived them at the time of the second admission.

3. *The out-of-court identification.* The defendant contends that his identification by the victim at the station was a suggestive confrontation prearranged by the police. In support of the argument, he points to the fact that the victim knew the rape suspect would be at the station and the fact that the police placed her in a room near an area where the defendant would pass. The judge made detailed findings on the question and concluded that the meeting "was

accidental and not so impermissibly suggestive as to taint any subsequent identification."

Accidental encounters between victim and suspect where the police make no attempt to elicit an identification have been uniformly held not to implicate due process considerations. *Commonwealth* v. *D'Ambra,* 357 Mass. 260, 263 (1970). *Commonwealth* v. *Leaster,* 362 Mass. 407, 410 (1972). *Commonwealth* v. *Walker,* 370 Mass. 548, 564-565, cert. denied, 429 U.S. 943 (1976). *Commonwealth* v. *Hervey,* 1 Mass. App. Ct. 727, 728-729 (1974). *Commonwealth* v. *Schlieff,* 5 Mass. App. Ct. 665, 670-671 (1977). *Commonwealth* v. *Brimage,* 6 Mass. App. Ct. 869 (1978). See *Commonwealth* v. *Barnett,* 371 Mass. 87, 93 n.7 (1976), cert. denied, 429 U.S. 1049 (1977) (an accidental confrontation occurring even in suggestive circumstances would be admissible). See also Model Code Pre-Arraignment Procedure § 160.2 and Commentary at 438-439 (1975); Sobel, Eye-Witness Identification § 20 (1972 & Supp. 1980). The judge's finding that the meeting was fortuitous is supported by evidence that the police who led the defendant down the stairs did not know that the victim was in an adjacent room, that the identification was spontaneous and unequivocal, and that the victim did not know the identities of the plainclothes officers who accompanied the defendant. The judge's application of the law to the facts found is also sound. We find no error in the denial of the motion to suppress this identification.[8] See *Commonwealth v. Jones,* 375 Mass. 349, 354 (1978); *Commonwealth* v. *Worlds,* 9 Mass. App. Ct. 162, 166 (1980).

---

[8] The judge also found that "the defendant's hair color and style, build and clothing, his black eye and missing teeth precluded beyond any reasonable doubt the chance of misidentification. He noted that the victim's sketch of her attacker made on the night of the incident "was a remarkable likeness of the defendant." We have that sketch and four color photographs of the defendant before us as part of the exhibits. The judge's remarks about the sketch are accurate. The defendant's distinguishing characteristics remove any doubt that the police arrested the correct person as described by the victim.

4. *Prosecutor's closing argument.*  The defendant asserts that a new trial is required because those portions of the prosecutor's summation set forth in the margin[9] prejudicially endorsed the victim's testimony and improperly appealed to the jury's sympathy and prejudices.

The comment concerning the victim's preparation was in response to testimony elicited by defense counsel that the victim had conferred with the prosecutor prior to trial. Viewed in context, we think it constituted proper argument and was not an impermissible endorsement of the victim's testimony.  See *Commonwealth* v. *Stone,* 366 Mass. 506, 516 (1974); *Commonwealth* v. *Daigle,* 379 Mass. 541, 549 (1980).  See also *Commonwealth* v. *Ferreira,* 381 Mass. 306, 316-317 (1980).

The remaining remarks were an improper attempt to arouse jury sympathy and prejudice.  We have criticized similarly thoughtless lines of argument before, and we have cautioned prosecutors against "persist[ing], by ill-advised rhetoric . . . , in attempting to snatch defeat from the jaws of victory." *Commonwealth* v. *Jones,* 9 Mass. App. Ct. 103, 119, further app. review granted, 380 Mass. 939 (1980). In this case, however, defense counsel's failure to object to the improper portions of the argument entitles the

---

[9] "This case is very important to you, for that reason, because you are the people who live in Suffolk County, and perhaps some of you ride those buses and ride those subways and walk those streets of Revere, Chelsea, Winthrop and the City of Boston."

"I submit to you, as she said, sure, she and I talked about this case before we tried it.  We talked about it for a good long time.  We prepared her for a good long time . . . ."

"[I]t is an experience not many eleven year old girls go through . . . Think of what she went through by giving this story.  Do you think she wanted to put herself through this? . . . She rose above all that and she rose to the occasion, now, please don't let her down."

"Do you think her parents, who have been here every day, wanted to put her through this, if they didn't believe, in their own minds? . . . They want to wash their hands of this and dispose of it and make it yesterday's business, so she can forget it and live the next fifty years with this back in her memory . . . Do you think they (her parents) are jerks and want to put her and the defendant through this if she didn't have it?"

defendant to review only under the standard set forth in *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967). This is not a case where the failure to object deprived the defendant of a substantial defense, nor is it one where an objection if made would have entitled him to a mistrial. On the entire record, it cannot be said that the argument, to the extent that it went unmitigated by the judge's closing charge, produced a substantial risk of a miscarriage of justice.

5. *Ineffective assistance.* The defendant's trial counsel had been admitted to practice for only nine months before this, his first Superior Court criminal trial.[10] The defendant's appellate counsel recites a litany of twenty-eight specific instances which purportedly show that trial counsel failed to represent the defendant effectively.[11] The trial judge made extensive findings on the question of competent representation, which will be accorded considerable deference on review. He found at least one of the suggested instances of ineffectiveness to be "insulting."[12] The judge analyzed the remaining assertions in detail and concluded that "the conduct of defense counsel did not fall measurably below the standard to be expected of the ordinary fallible lawyer. On the contrary, it met or exceeded that standard in all significant respects." We also find no deficiency serious enough to warrant a new trial. See *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978); *Commonwealth* v. *Key*, 381 Mass. 19, 31-32 (1980).

---

[10] The judge found that trial counsel was associated in practice with other lawyers who had more experience than he did, that he had tried one civil jury case in the Superior Court, that he had worked on criminal trial and pretrial matters in the District Court, and that he had available to him the advice of his more experienced associates.

[11] All are based on the dubious assumption that a young lawyer is always an incapable and unprepared lawyer.

[12] This is the suggestion that defense counsel should have moved for a sperm test of the victim's clothing. The judge noted in summarily dismissing this claim that the Commonwealth's evidence was "overwhelming," that the "trial issue in this case was identity, and [that] defense counsel did the best he could with it."

Consideration of an ineffective assistance claim requires a two-step inquiry: "whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). *Commonwealth* v. *Adams*, 374 Mass. at 727 (1978). *Commonwealth* v. *Rondeau*, 378 Mass. 408, 411-412 (1979). *Commonwealth* v. *Key*, 381 Mass. at 32. Some of the alleged missteps include the failure of counsel to raise the previously discussed issues of illegal arrest and statements obtained in violation of the Miranda rule. None of these issues, if raised, would have been of any value to the defendant. See *Commonwealth* v. *Saferian*, 366 Mass. at 98-99; *Commonwealth* v. *Williams*, 378 Mass. at 239-240. As already noted, defense counsel's failure to object to isolated portions of the prosecutor's summation is insufficient to require reversal.

The balance of the attack on the defendant's representation concerns (1) certain tactical judgments made in connection with the motion to suppress and (2) a variety of perceived trial errors. The record amply supports the judge's finding that the motion to suppress was adequately prepared, presented, and argued. See *Commonwealth* v. *Rondeau*, 378 Mass. at 413; *Commonwealth* v. *Sellon*, 380 Mass. 220, 225-226 (1980). The missteps at trial were not such as to deprive the defendant of his only realistic defense of alibi, and it has not been shown over-all that better work would have helped his situation in any material way. See *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). From the outset, the defendant's case suffered from "a weakness in the facts rather than any inadequacy of counsel." *Id.* at 111. We are satisfied, after examining the entire record of the trial, that the defendant was provided with effective representation.

> *Order denying motion for a*
> *new trial affirmed.*
>
> *Judgments affirmed.*