COMMONWEALTH *vs.* DAVID DISE.

No. 90-P-474.

Hampden. November 7, 1991. - December 20, 1991.

Present: DREBEN, FINE, & IRELAND, JJ.

*Arrest. Search and Seizure*, Threshold police inquiry. *Radio Message.*

The arrest in one municipality of a criminal defendant by a police officer
   of another municipality was lawful as a citizen's arrest where the officer
   had probable cause to believe that a felony had been committed and
   that the defendant committed it, and evidence seized as a result of the
   arrest was properly admissible at trial. [704-705]
There was no merit to a criminal defendant's contention that the judge
   erred in not instructing the jury to treat the testimony of a codefendant
   with caution, where there was no plea agreement with the witness, no
   request for such an instruction, and no objection to the charge and
   where the codefendant's possible bias was fully explored. [705-706]


INDICTMENTS found and returned in the Superior Court
Department on March 19, 1987, and January 14, 1988,
respectively.

A pretrial motion to suppress evidence was heard by *Wil-
liam W. Simons*, J., and the case was tried before him.

*Robert A. Costantino* for the defendant.

*Maria F. Rodriguez*, Assistant District Attorney, for the
Commonwealth.

DREBEN, J. The primary question on this appeal from the
defendant's convictions of assault with intent to rob and of
unarmed robbery is the validity of an arrest in Springfield by
police officers of the town of Ludlow. Arguing that this arrest
was illegal, the defendant, prior to trial, filed a motion to
suppress any evidence, including identifications, obtained as a
consequence of the arrest.

The only witnesses at the hearing on the motion were the
defendant and the arresting Ludlow police officer, James

Nowakowski. Nowakowski's version of the events, which the judge found credible, was as follows. Shortly before he stopped the defendant's car in Springfield, Nowakowski received a radio communication from the Wilbraham police concerning a purse snatching that had just taken place on Three Rivers Road in Wilbraham. According to the broadcast, the three black males who were involved were headed north on Three Rivers Road in a dark Datsun-type vehicle with a white stripe. Suspecting that the men might be heading towards Springfield over the Indian Orchard-Ludlow Bridge, Nowakowski stationed his cruiser on Parker Terrace in Ludlow to await the vehicle.

A few minutes later, he saw a "Datsun-type vehicle, dark, with a white stripe" stop at a red light. There were two lanes of traffic in the direction the vehicle was traveling. The car stopped in the inside right hand lane near Nowakowski's marked cruiser. Only one person appeared to be in the car, the defendant, who was driving. While the light was still red, the defendant cut across the outer left lane and illegally turned left to cross the Indian Orchard-Ludlow Bridge.

Nowakowski pulled out, right behind the defendant, and put on his blue lights to stop him. The defendant did not pull over but, rather, crossed the bridge into Springfield and stopped at a gas station. He came out of his vehicle and met Nowakowski at its rear. As Nowakowski approached the defendant's car, he saw a second male "slumped in the rear seat of this vehicle," and, as he got closer, he saw "another male subject slumped down in the front seat of the vehicle's passenger side." Nowakowski then called for assistance.

The motion judge orally expressed the conclusion that on the defendant's account of the events there was no stop,[1] but on the officer's, which the judge accepted, there was a stop which could be justified on two bases. "One was upon witnessing a violation, such as cutting across a lane and going

---

[1]The defendant's testimony was that he turned left when the light was green and that, while he was in a self-service filling station, pumping gas after having paid, he was approached by the officer and asked for his license and registration.

through a red light, making the stop and the inquiries. The other would be a reasonable stop, based on the principles of *Terry* v. *Ohio.* [392 U.S. 1 (1968)]."[2] We affirm on different grounds.[3]

The Commonwealth argues that the defendant has waived the propriety of the Springfield stop and arrest by Ludlow police officers because he did not raise the issue before the motion judge. While the Commonwealth's argument has some force, the issue may have been marginally raised.[4] In any event, since the result we reach would not be changed by resolving this issue, we proceed directly to the merits. See *Commonwealth* v. *Gullick,* 386 Mass. 278, 281 (1982).[5]

The legal principles governing an extraterritorial arrest are not in dispute. At common law the power of a police officer to make an arrest without a warrant was "limited to the boundaries of the governmental unit by which he was ap-

---

[2]The judge continued: "On having the information transmitted over the radio and seeing the vehicle and the driver meeting the description, there would have appropriately been a basis to stop for purposes of identification. The stop was not intrusive, beyond using its dome lights. The officer didn't stop him with gun drawn or cut across or do any of those things, so it was an appropriate *Terry* stop, if that version be accepted."

[3]None of our cases has discussed or permitted police officers to make an extraterritorial *Terry* stop, and we do not consider that question. See *Commonwealth* v. *Gullick,* 386 Mass. 278, 283 (1982). We also do not consider whether the traffic violation was an arrestable offense. See G. L. c. 41, § 98A, which permits extraterritorial "fresh pursuit" arrests for arrestable offenses committed in the arresting officer's presence and within his jurisdiction. Compare *Commonwealth* v. *LeBlanc,* 407 Mass. 70 (1990), with *Commonwealth* v. *O'Hara,* 30 Mass. App. Ct. 608 (1991).

[4]Both in his written motion and orally the defendant claimed the Ludlow police officer was without authority to stop the defendant in Springfield. The reasons for this claim, however, were that no traffic offense occurred in Ludlow and the officer did not have reasonable suspicion to stop the defendant in Ludlow. The judge's findings confirm that these were the defendant's arguments.

[5]Additional contentions in the defendant's brief on appeal — that the radio broadcast was not reliable and the traffic violation was not an arrestable offense — were not raised even marginally before the motion judge. These issues do not concern us for additional reasons. Had the question of the reliability of the broadcast been raised at the motion to suppress, the trial transcript indicates the Commonwealth could have shown its reliability. As indicated in note 3, *supra,* we do not rely on G. L. c. 41, § 98A.

pointed," unless he was acting "in fresh and continued pursuit of a suspected felon who ha[d] committed an offense in the officer's presence and within his territorial jurisdiction." *Commonwealth* v. *Grise*, 398 Mass. 247, 249 (1986). *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 168 (1981). General Laws c. 41, § 98A, as inserted by St. 1967, c. 263, expanded the common law rule to allow extraterritorial "fresh pursuit" arrests by police officers for any arrestable offense, whether it be a felony or misdemeanor, initially committed in the arresting officer's presence and within his jurisdiction. *Commonwealth* v. *LeBlanc*, 407 Mass. 70, 72 (1990). In addition, a police officer, while unable to act as an officer in an adjoining jurisdiction,[6] does not cease to be a citizen in that jurisdiction, *Commonwealth* v. *Harris*, 11 Mass. App. Ct. at 170-172, and may lawfully conduct a citizen's arrest there if he has probable cause to believe that a felony has been committed and that the person arrested has committed it. *Id.* at 172. See also *Commonwealth* v. *Gullick*, 386 Mass. at 282-283 (construing New Hampshire law).

We conclude, on the basis of the facts found by the motion judge and the reasonable inferences which may be drawn from the evidence credited by him, that the defendant's arrest in Springfield by Officer Nowakowski was lawful as a citizen's arrest and that the evidence obtained as a consequence thereof was properly admitted at trial. A few minutes after hearing a radio broadcast, Officer Nowakowski saw a vehicle which fit the description of the getaway car involved in a recent unarmed robbery on Three Rivers Road in Wilbraham (a Datsun-type dark car with a white stripe), the car was driven by a black man, the broadcast having stated that three black males had been seen leaving the scene, and the car arrived at the very location that Nowakowski had predicted. From Officer Nowakowski's description of the loca-

---

[6]Despite suggestions in a number of cases that police departments may take the precaution of having their officers sworn in as special officers on the police forces of neighboring municipalities, for some reason this procedure does not appear to be often followed. See *Commonwealth* v. *Grise*, 398 Mass. at 252-253 n.6; *Commonwealth* v. *LeBlanc*, 407 Mass. at 73; *Commonwealth* v. *Harris*, 11 Mass. App. Ct. at 171-172 n.6.

tion of his cruiser and its immediate position after the defendant's illegal left turn ("right behind him"), it can also be inferred that the defendant saw the police cruiser and this observation precipitated his left turn across traffic to avoid the officer.[7]

An objective view of these facts provides probable cause to believe that a felony had been committed and that the defendant had committed it. See *Commonwealth* v. *Blow*, 362 Mass. 196, 199 (1972); *Commonwealth* v. *Ortiz*, 376 Mass. 349, 354 (1978). The refusal of the defendant to stop despite the blue lights of the cruiser four to five feet behind him also created grounds for this conclusion, *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. 230, 234 (1982), although we need not rely on this additional factor.[8]

The fact that Officer Nowakowski intended to make only an investigative stop and made the arrest after he saw the other two men and only after the occupants of the car were identified is immaterial. His subjective intention does not invalidate the arrest if probable cause to arrest existed at the time of the stop. *Commonwealth* v. *Gullick*, 386 Mass. at 284. See *Commonwealth* v. *O'Hara*, 30 Mass. App. Ct. 608, 610 n.2 (1991). That the judge upheld the search on different grounds is also of no consequence. *Commonwealth* v. *Osorno*, 30 Mass. App. Ct. 327, 332 n.8 (1991). See *Commonwealth* v. *Signorine*, 404 Mass. 400, 403 n.1 (1989).

---

[7]Indeed at trial, the defendant acknowledged that he had seen the parked cruiser.

[8]While an attempt to avoid observation or contact with the police may be considered as a factor, it has been said that an attempt to elude the police once pursuit has begun may not be considered in the context of a *Terry* stop. See *Commonwealth* v. *Wren*, 391 Mass. 705, 708 n.2 (1984); Smith, Criminal Practice and Procedure § 305 (2d ed. 1983 & Supp. 1991). There may be different considerations in the *arrest* context. See *Commonwealth* v. *Ceria*, 13 Mass. App. Ct. at 234; Smith, op. cit. § 110, at 79; *State* v. *Degrenier*, 128 N.H. 547 (1986); 2 LaFave, Search & Seizure § 3.6(e), at 62 (2d ed. 1987) ("if there already exists a significant degree of suspicion concerning a particular person, the flight of that individual upon the approach of the police may be taken into account and may well elevate the pre-existing suspicion up to the requisite Fourth Amendment level of probable cause").

The defendant's claim that the judge erred in not instructing the jury that they should treat the testimony of a codefendant with caution is without merit. There was no plea agreement here and no suggestion that the Commonwealth was vouching for the witness. Contrast *Commonwealth* v. *Ciampa*, 406 Mass. 257, 266 (1989). Moreover, there was no request by trial counsel for such an instruction and no objection to the charge. The codefendant's possible bias was fully explored. There was no error, let alone a substantial risk of a miscarriage of justice.

*Judgments affirmed.*