SUPREME JUDICIAL COURT 
 
 COMMONWEALTH vs. MICHAEL McCARTHY

 
 Docket:
 SJC-13667
 
 
 Dates:
 December 4, 2024 - April 25, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Middlesex
 

 
 Keywords:
 Cellular Telephone. Search and Seizure, Pursuit, Inevitable discovery, Fruits of illegal search. Practice, Criminal, Motion to suppress. Constitutional Law, Search and seizure. Police Officer. Municipal Corporations, Police.
 
 

       Indictments found and returned in the Superior Court Department on October 9, 2019.
      A pretrial motion to suppress evidence, filed on September 14, 2022, was heard by Kenneth W. Salinger, J., and a motion for reconsideration was considered by him.
      An application for leave to prosecute an interlocutory appeal was allowed by Gaziano, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.  The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
      Melissa W. Johnsen, Assistant District Attorney (Christopher M. Tarrant also present) for the Commonwealth.
      Joseph N. Schneiderman for the defendant.
      WOLOHOJIAN, J.  While investigating a home invasion that had occurred the day before in Lowell, two detectives from the Lowell police department crossed into New Hampshire and spoke with the defendant.  After becoming suspicious that the defendant was deleting data from his cell phone during this conversation, one of the Lowell detectives seized it from the defendant's hands, brought it to Massachusetts, and subsequently applied for (and obtained) a warrant to search it.  The questions in this interlocutory appeal from the allowance of the defendant's motion to suppress are:  did the detective have extraterritorial authority to seize the cell phone and, if not, is suppression the correct remedy?  We conclude that the detective did not have extraterritorial authority, either as a statutory matter or under the common law, to make a warrantless seizure in New Hampshire and that, for the reasons of deterrence and judicial integrity that underlie our exclusionary rule, suppression is the appropriate remedy.  We accordingly affirm the order allowing the motion to suppress.
      Background.  The judge's findings rested on the testimony of Detective Bowler of the Lowell police department, who was the Commonwealth's sole witness and whose testimony the judge credited in whole.[1]  We recite the facts as found by the motion judge and will not disturb them absent clear error.  Commonwealth v. Wittey, 492 Mass. 161, 174 (2023).
      In July of 2019, a home invasion and assault occurred in Lowell.  One of the victims identified the codefendant as the perpetrator and the defendant as possibly being involved to two detectives of the Lowell police department:  Detective Bowler and Detective Gonsalves.  The detectives established that both men lived in Nashua, New Hampshire.  Accordingly, the day after the home invasion, the detectives drove to Nashua to pursue their investigation.  
      While en route, the detectives called the Nashua police department "as a courtesy" to advise that they intended to speak to two Nashua residents.  A Nashua police department employee asked who the detectives were trying to find and, upon being given the defendant's and codefendant's names, provided their last known local addresses.  
      The Nashua police department also assigned two uniformed patrol officers to accompany the detectives.  The Lowell detectives and the Nashua officers first met at the codefendant's address.  But no one was there, so the detectives and officers then drove to the defendant's residence.  As the detectives and officers were parking their vehicles, a woman (whom one of the Nashua officers recognized as the defendant's girlfriend) drove past and parked nearby.  Detective Bowler and one of the Nashua officers then walked over to the girlfriend, and Bowler engaged her in a conversation in which the Nashua officer did not participate.  In response to Bowler's inquiry, the girlfriend confirmed that the defendant had driven her car to Lowell the day before.  At Bowler's request, the girlfriend called the defendant to tell him that some police detectives were looking for him.
      The defendant emerged onto a large porch where he met and spoke with Detective Bowler.  Detective Gonsalves and one of the Nashua officers, Officer Zupkosky, each stood about six feet away on opposite sides of Bowler.  The second Nashua officer remained further away, near the street.  Although they were not physically far away, neither Detective Gonsalves nor Officer Zupkosky spoke with or questioned the defendant.
      The defendant acknowledged to Detective Bowler that he had been in the victim's apartment in Lowell the day before, and that he had spoken to the codefendant that day, without specifying whether he had done so by telephone.  When specifically asked whether he and the codefendant had spoken by telephone the day before, the defendant demurred, saying only that they had spoken "recently."  Detective Bowler then requested that the defendant show him his cell phone's call log.  The defendant acquiesced, pulled out his cell phone, unlocked it, and made some motions that Bowler assumed meant that the defendant was pulling up the call log.  At that point, before turning the screen to Detective Bowler, the defendant made several swiping gestures which appeared to Bowler to be consistent with deleting an entry from the call log.  The defendant then showed the call log to Detective Bowler; it revealed no calls to or from the codefendant on the day before.
      Based on his suspicion that the defendant had deleted one or more entries from the call log, Detective Bowler confronted the defendant, who denied deleting anything.  Detective Bowler then went over to Officer Zupkosky and asked him whether, by virtue of his position on the porch, he had been able to see what the defendant had done on his cell phone.  Officer Zupkosky said that he had seen the defendant delete something from the call log.
      Detective Bowler immediately returned to the defendant and seized the cell phone from his hands without obtaining his consent.  Neither the Lowell detectives nor the Nashua officers placed the defendant under arrest.  However, Detectives Bowler and Gonsalves brought the cell phone to Lowell, where they later obtained a warrant to search its contents.
      On October 24, 2019, a Middlesex County grand jury returned three indictments against the defendant charging him with home invasion, in violation of G. L. c. 265, § 18C; armed assault in a dwelling, in violation of G. L. c. 265, § 18A; and armed robbery, in violation of G. L. c. 265, § 17.  The defendant moved to suppress the evidence arising from the seizure of his cell phone, and after an evidentiary hearing at which Detective Bowler was the sole witness, a Superior Court judge allowed the motion.  The Commonwealth timely applied for leave to pursue an interlocutory appeal, see Mass. R. Crim. P. 15, as amended, 476 Mass. 1501 (2017), and a single justice of this court remanded the matter to the Superior Court "for further hearing and findings on the issue of extraterritorial authority."
      A second evidentiary hearing was held, and again Detective Bowler was the sole witness.  After the hearing, the motion judge issued a superseding set of findings of fact and conclusions of law in which he noted that Detective Bowler's testimony on the extraterritorial seizure "essentially repeat[ed]" his testimony from the first hearing, "albeit with a little bit more detail."  The motion judge again concluded that the Lowell detectives had no authority to seize the defendant's cell phone, and suppressed evidence obtained from it.  A single justice of this court allowed the Commonwealth's application for leave to appeal from the decision to the Appeals Court, and we later transferred the case here on our own motion. 
      Discussion.  The Commonwealth argues that the judge erred in concluding that Detective Bowler acted outside his territorial authority and, in the alternative, that the judge erred in excluding the evidence found on the cell phone.  "In reviewing a ruling on a motion to suppress, we accept the motion judge's findings of fact absent clear error," but "conduct an independent review of the judge's application of constitutional principles to the facts found."  Commonwealth v. Privette, 491 Mass. 501, 506-507 (2023).
      1.  Territorial authority.  Had the events of this case transpired wholly within Lowell, the warrantless seizure of the defendant's telephone would have been constitutionally permissible.  Detective Bowler had probable cause to believe that the telephone contained evidence relevant to the home invasion, and the defendant's observed deletion of that evidence created an exigency justifying its warrantless seizure.  See Commonwealth v. Almonor, 482 Mass. 35, 49 (2019); Commonwealth v. DeJesus, 439 Mass. 616, 620 (2003) ("A reasonable belief as to the potential loss or destruction of evidence may create exigent circumstances permitting a warrantless search and seizure of evidence").  But the warrantless seizure occurred outside of Lowell, and so we must determine whether Detective Bowler, a member of the Lowell police department, had any legal authority to seize the defendant's cell phone while in Nashua, New Hampshire, in the circumstances presented.  "A police officer lacks authority to act outside his or her jurisdiction, unless specifically authorized by statute or in the performance of a valid citizen's arrest at common law."  Commonwealth v. Twombly, 435 Mass. 440, 442 (2001), citing Commonwealth v. Savage, 430 Mass. 341, 343-346 (1999).  
      We turn first to the statutory provisions that "authorize extraterritorial police action in well defined situations" to determine whether any of them permits the warrantless seizure that occurred in this case.  Commonwealth v. Lahey, 80 Mass. App. Ct. 606, 610 (2011).
      a.  Fresh pursuit.  In 1967, the Legislature broadened the common-law rule (which had been limited to felonies) and permitted an officer "on fresh and continued pursuit" to make an arrest outside his appointing jurisdiction for any offense "committed in his presence within his jurisdiction for which he would have the right to arrest within his jurisdiction without a warrant."  G. L. c. 41, § 98A.  See Commonwealth v. Grise, 398 Mass. 247, 249 (1986).  Even assuming arguendo that, despite its plain language, § 98A is not limited to extraterritorial warrantless arrests and extends to extraterritorial warrantless seizures of property, it does not apply here.  Detective Bowler did not seize the defendant's cell phone while in fresh and continued pursuit of the defendant, nor had the defendant committed any crime in Lowell while in the detective's presence.  See Grise, 398 Mass. at 250.
      b.  Mutual aid and cross designation.  The Legislature has authorized municipalities to enter into mutual aid agreements, including with municipalities in adjacent States.  If two or more municipalities have entered into such an agreement, then for purposes of Massachusetts law officers from those jurisdictions "have all the immunities and powers granted to them in the municipalities that employ them" while providing mutual aid.  G. L. c. 40, § 8G, first par.  See N.H. Rev. Stat. Ann. §§ 105:13, 105:13-a.[2]  Here, however, there is nothing to suggest that Lowell and Nashua have entered into a mutual aid agreement.  Nor was there any evidence that the detectives had been designated as special police officers by Nashua.  See G. L. c. 41, § 99; Commonwealth v. Bartlett, 465 Mass. 112, 117 n.6 (2013).
      c.  Request for extraterritorial aid.  Both G. L. c. 37, § 13, and its New Hampshire analogue, N.H. Rev. Stat. Ann. § 105:13, give officers authority to act in another jurisdiction in response to a specific request for aid by that other jurisdiction.  "The plain language of the statute . . . grants an extraterritorial officer the authority to act only when an official of the host jurisdiction has requested assistance."  Bartlett, 465 Mass. at 116.  In addition, each statute limits the circumstances in which requests for extraterritorial aid may be made.[3]  See G. L. c. 37, § 13; N.H. Rev. Stat. Ann. § 105:13.  Either statute might have applied had Nashua asked the Lowell detectives for aid in Nashua.  But neither can apply on the facts of this case, where the Lowell detectives were the ones who asked for assistance.
      In sum, the Commonwealth has not identified any statute that would place Detective Bowler's warrantless seizure of the cell phone within his statutory extraterritorial authority.  Compare, e.g., G. L. c. 41, § 95 (granting extraterritorial authority to execute arrest warrants); G. L. c. 41, § 98 (granting extraterritorial authority to carry weapons); G. L. c. 276, § 2A (statutory search warrant form permits execution by any State, county, or local law enforcement officer).  We accordingly turn to the common law.
      d.  Extraterritorial authority under common law.  "When police officers leave their jurisdiction 'they cease[] to be officers but they d[o] not cease to be persons.'"  Grise, 398 Mass. at 250, quoting Commonwealth v. Harris, 11 Mass. App. Ct. 165, 168-170 (1981).  On this basis, we have permitted officers to make an extraterritorial arrest if the circumstances would justify a private citizen in making one.  See, e.g., Commonwealth v. Gullick, 386 Mass. 278, 282 (1982); Harris, 11 Mass. App. Ct. at 171-172.  See also, e.g., Commonwealth v. Hernandez, 456 Mass. 528, 530 (2010) (suppressing evidence after extraterritorial search based on suspected misdemeanor); Savage, 430 Mass. at 345-347 (suppressing evidence from stop by Vermont State police trooper in Massachusetts where no statute authorized extraterritorial stop and neither State's laws permit citizen's arrests for misdemeanors).  "It is the generally accepted rule that the validity of an arrest is determined by the law of the State in which the arrest is made."  Gullick, 386 Mass. at 281.  See State v. Goff, 118 N.H. 724, 727-728 (1978) (applying New Hampshire law where arrest by Massachusetts police officers occurred in New Hampshire).  Here, that State is New Hampshire, and we accordingly turn to its law to ascertain whether a private citizen could, in the circumstances presented, have seized the defendant's cell phone.  See Commonwealth v. Sawyer, 389 Mass. 686, 692-693 (1983) ("[i]n determining the validity of an extraterritorial arrest, we look to the law of the State in which the arrest was made").    
      Under New Hampshire common law, a private citizen has the right "to make an arrest upon reasonable grounds to suspect that the person has committed a felony."[4]  Gullick, 386 Mass. at 282-283, and cases cited.  See Petition of Moebus, 73 N.H. 350, 351 (1905) ("[b]eing under sentence for felony and unlawfully at large, [the defendant] could lawfully be arrested and returned to imprisonment, even by a private person, without warrant").  To similar effect, New Hampshire's code provides that
"[a] private person acting on his own is justified in using non-deadly force upon another when and to the extent that he reasonably believes it necessary to arrest or prevent the escape from custody of such other whom he reasonably believes to have committed a felony and who in fact has committed that felony . . . ."
N.H. Rev. Stat. Ann. § 627:5(IV).  Destruction of evidence is a felony under New Hampshire law, see N.H. Rev. Stat. Ann. § 641:6,[5] and we accept for these purposes that the Lowell detectives could have effected a citizen's arrest under New Hampshire law after seeing the defendant delete information from the call log on his cell phone when the detectives had probable cause to believe that the information was pertinent to an investigation into a home invasion.
      But the fact remains that no arrest was made.  Detective Bowler's actions cannot be authorized as a citizen's arrest for the simple reason that he never arrested the defendant.  Thus, the critical question is whether New Hampshire law recognizes a theory of "citizen's seizure" of property in the absence of a citizen's arrest.  This would be a novel theory, and the Commonwealth cites no New Hampshire law that would allow a private citizen to seize the property of another for evidentiary purposes in such circumstances.  Compare Douglas v. State, 695 S.W.2d 817, 819-820 (Tex. App. 1985) (under Texas law, private citizens empowered to seize stolen property).  Indeed, to the contrary, New Hampshire recognizes the common-law tort of conversion, which concerns the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."  Kingston 1686 House, Inc. v. B.S.P. Transp., Inc., 121 N.H. 93, 95 (1981), quoting Muzzy v. Rockingham County Trust Co., 113 N.H. 520, 523 (1973).  In addition, a person commits theft under New Hampshire law "if he obtains or exercises unauthorized control over the property of another with a purpose to deprive him thereof."  N.H. Rev. Stat. Ann. § 637:3.
      We repeat that Detective Bowler -- were he within his territorial jurisdiction -- acted entirely reasonably given that there was probable cause to believe a felony had been committed and there were exigent circumstances created by the defendant's deletion of information from the cell phone.  But that is not the question presented here.  Instead, the question is whether New Hampshire law allows a private citizen to seize the property of another in similar circumstances.  And, as we have set out above, the Commonwealth has not shown that it does.
      2.  Inevitable discovery.  In the alternative, the Commonwealth argues that the cell phone evidence would have been inevitably discovered, pointing to the subsequent issuance of the search warrant for the contents of the cell phone, as well as the authority of a Nashua police officer to hypothetically seize the cell phone.  These theories were not advanced at the first hearing on the motion to suppress,[6] nor at the second hearing, and the Commonwealth did not elicit testimony to support them.  On the record before us, neither of those theories is sufficiently supported to carry the Commonwealth's burden of proving discovery to be "certain as a practical matter" "under the circumstances existing at the time of the unlawful seizure" (citation omitted).  Commonwealth v. Campbell, 475 Mass. 611, 622 (2016).  See Commonwealth v. Luna, 92 Mass. App. Ct. 523, 530 (2017).
      3.  Remedy.  "[T]he 'requirement that a police officer have lawful authority when he deprives [an] individual[] of [his] liberty is closely associated with the constitutional right to be free from unreasonable searches and seizures.'"  Hernandez, 456 Mass. at 532, quoting Commonwealth v. LeBlanc, 407 Mass. 70, 75 (1990).  For this reason, our cases have uniformly held that "[t]he appropriate remedy for unauthorized extraterritorial action is suppression of the resulting evidence."  Lahey, 80 Mass. App. Ct. at 610.  See Grise, 398 Mass. at 253; Luna, 92 Mass. App. Ct. at 529.  We do not recognize a "good faith" exception to this rule.  Hernandez, 456 Mass. at 533.    
      Relying on State v. Smith, 154 N.H. 113, 115-116 (2006), the Commonwealth argues that New Hampshire courts would not exclude evidence obtained by a New Hampshire municipal police officer acting outside his statutory territorial authority where the officer acted in good faith, and asks that we apply the New Hampshire approach rather than our own.  We see no reason to do so.  Where, as here, there is a conflict between two jurisdictions' exclusionary rules, most courts use an exclusionary rule approach focusing on the purposes underlying the exclusionary rule, rather than a traditional multifactor conflict of laws approach, to resolve the conflict.  See Commonwealth v. Britton, 658 Pa. 584, 604-613 (2020) (Wecht, J., concurring) (surveying jurisdictions); McGlynn, Competing Exclusionary Rules in Multistate Investigations:  Resolving Conflicts of State Search-and-Seizure Law, 127 Yale L.J. 406, 448 (2017).  We are in line with the majority of courts and have applied the exclusionary rule approach.  Commonwealth v. Brown, 456 Mass. 708, 715 (2010).  The rule's purposes are "to deter police misconduct and preserve judicial integrity by dissociating courts from unlawful conduct."  Commonwealth v. Nelson, 460 Mass. 564, 570–571 (2011).  
      Here, we deal with a Massachusetts police detective who, while acting outside his territorial authority, seized and brought to Massachusetts evidence the Commonwealth seeks to use in connection with a criminal prosecution under Massachusetts law in a Massachusetts court.  The dual purposes of deterrence and judicial integrity underlying the exclusionary rule are better furthered in these circumstances by application of the Massachusetts exclusionary rule.
      Conclusion.  For the foregoing reasons, we conclude that the seizure of the defendant's cell phone was without authority, and that the resulting evidence should be suppressed.  We therefore affirm the order allowing the motion to suppress.
So ordered.
footnotes

      [1] The facts are drawn from the judge's findings made after the matter was remanded to him by a single justice of this court for further hearing and findings on the issue of extraterritorial authority.  The judge's further findings superseded and replaced his earlier ones.
      [2] "The authority of any duly authorized police officer, constable or watchman of any town or city shall extend to any other city or town in the state, provided that the chief law enforcement officer of the requesting town or city has executed with the chief law enforcement officer of the responding town or city a written agreement which sets forth the terms and conditions under which such assistance may be requested or rendered."  N.H. Rev. Stat. Ann. § 105:13(I).
      [3] Under G. L. c. 37, § 13, officers may request "aid in the execution of their office in a criminal case, in the preservation of the peace, in the apprehending or securing of a person for a breach of the peace and in cases of escape or rescue of persons arrested upon civil process."  Under N.H. Rev. Stat. Ann. § 105:13(II), requests for extraterritorial aid are limited to "an emergency for the purposes of making an arrest or effecting custody of a detainee, conducting a search, quelling a disturbance, providing traffic or crowd control, holding an arrested person in need of medical treatment in temporary custody until medically cleared to enter a state or county correctional facility or municipal jail, or securing a crime scene."  
      [4] Our common law is to the same effect:  "a private citizen may lawfully arrest someone who has in fact committed a felony."  Grise, 398 Mass. at 250.  "Generally, the person arrested must be convicted of a felony before the 'in fact committed' element is satisfied and the arrest validated.  If the citizen is in error in making the arrest, he may be liable in tort for false arrest or false imprisonment."  Harris, 11 Mass. App. Ct. at 170.  
      We have "relaxed" the "in fact committed" requirement in cases where it is a police officer, as opposed to a private citizen, who makes the arrest.  As a result, whereas a private citizen may lawfully arrest only someone who has "in fact" committed a felony, "officers need[] only 'probable cause to believe that a felony ha[s] been committed and that the person arrested had committed it'" in order to make a valid citizen's arrest.  Commonwealth v. Claiborne, 423 Mass. 275, 280 (1996), quoting Harris, 11 Mass. App. Ct. at 172.  But this "relaxed" rule pertains to our own common law of citizen's arrest, and we have only applied it in situations where an arrest took place within Massachusetts.  See Savage, 430 Mass. at 346 (Vermont State police trooper stopped vehicle after pursuing it into Massachusetts); Claiborne, 423 Mass. at 281 (Brookline police officers stopped vehicle after pursuing it into Boston).  See also Commonwealth v. Limone, 460 Mass. 834, 841 n.7 (2011) (where off-duty Somerville police officer performed investigatory stop in Woburn, acknowledging rule but declining to reach issue because no arrest occurred).  New Hampshire has not extended its common law of citizen's arrest in similar fashion. 
      [5] "A person commits a class B felony if, believing that an official proceeding . . . or investigation is pending or about to be instituted, he . . . [a]lters, destroys, conceals or removes any thing with a purpose to impair its verity or availability in such proceeding or investigation . . . ."  N.H. Rev. Stat. Ann. § 641:6.  See State v. Dodds, 159 N.H. 239, 245 (2009).
      [6] The Commonwealth raised inevitable discovery only in its motion for reconsideration.