## COMMONWEALTH vs. RONALD GULLICK.

Essex. February 3, 1982. — May 13, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Search and Seizure*, Arrest. *Arrest*. *Constitutional Law*, Search and seizure.

Where a Massachusetts police officer had probable cause in the circumstances to arrest a defendant in New Hampshire the defendant's arrest was lawful under New Hampshire law on the ground that the officer conducted a valid citizen's arrest, and it was immaterial whether he subjectively intended to make only an investigative stop. [281-284]

INDICTMENTS found and returned in the Superior Court Department on July 2, 1979.

A motion to suppress evidence was heard by *Donahue, J.*, and the cases were tried before *Morse, J.*

The Supreme Judicial Court granted a request for direct appellate review.

*Frank R. Herrmann* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. Following a jury trial the defendant was found guilty on two indictments of armed robbery while masked, two indictments of rape, three indictments of assault by means of a dangerous weapon, and one indictment of assault and battery by means of a dangerous weapon. He was sentenced to concurrent terms of not less than twenty-five nor more than thirty-five years at the Massachusetts Correctional Institution, Walpole, on the indictments for armed robbery while masked and for rape. The other indictments were placed on file with the defendant's consent. Before trial, the defendant moved to suppress certain physical evidence seized at the time of his arrest. The

motion was denied, and the defendant now appeals on the ground that the admission of this evidence violated his rights under the Fourth and Fourteenth Amendments to the Constitution of the United States. We find no error and affirm.

We summarize the pertinent facts leading to the arrest as found by a judge of the Superior Court who ruled on the motion to suppress. On September 6, 1977, at approximately 2:45 A.M., a man and a woman came to the Massachusetts State police substation in Topsfield and informed Corporal Arnold W. Ellis, that the man had been robbed and the woman raped about 2 A.M. at the Coronet Motel in Danvers. They described their assailant as a black male, wearing Army-type clothing, and carrying a combat belt to which was attached a pair of handcuffs, a bayonet, and a nightstick. This information was transmitted by radio to troopers in the area, one of whom was Trooper Edwin F. Johnson. Shortly thereafter, Trooper Johnson was made aware of a second rape and robbery that had occurred about 3 A.M. at Al's Motel in Middleton, committed by someone fitting the same description. During the previous month Trooper Johnson had been in contact with the New Hampshire State police concerning a male who fit the description and who had been committing similar crimes in New Hampshire. On August 2, 1977, Detective Charles Connor of the Portsmouth, New Hampshire, police department sent a letter to the Lynnfield barracks of the Massachusetts State police describing the defendant and advising the Massachusetts State police that he was suspected of committing rapes and robberies in motel and hotel rooms and was believed to be traveling from New Hampshire into Massachusetts. The letter also stated that the defendant operated a 1976 Dodge van, registered in New Hampshire and bearing the registration number RE-8394. By means of a telephone call on August 26, 1977, Detective Connor informed Trooper Johnson that the color of the defendant's van was black, that the defendant was a military police officer at Pease Air Force Base, New Hampshire, and that he

was suspected of committing similar offenses while stationed in New York. Trooper Johnson spoke again to the New Hampshire police on September 1, 1977, in connection with a burglary believed to have been committed by the defendant.

Trooper Johnson radioed this information to Corporal Ellis and advised Corporal Ellis that the perpetrator of the September 6, 1977, offenses could well be the defendant. Corporal Ellis radioed this information to troopers in the area. Trooper Mackin, who had overheard the radio communication, was instructed to wait at a rest area on Route 95 near the New Hampshire border and to be on the lookout for a black van bearing New Hampshire registration number RE-8394. At approximately 3:50 A.M. he spotted the van traveling toward, and about one-half mile away from, the New Hampshire border. Because the van was about to cross the border, Trooper Mackin radioed for instructions. After being told by Corporal Ellis to stop the van, Trooper Mackin brought the van to a stop about one-half mile across the New Hampshire border. When the defendant stepped out of the van, Trooper Mackin noticed that the defendant was wearing military clothing and fit the description of the assailant. Trooper Mackin observed that the fly to the defendant's pants was unzipped and there appeared to be seminal stains in the area of the crotch. The van swayed slightly and Trooper Mackin glanced into the van to see if there were other people inside. He observed a ski mask and a utility bag that was unzipped three-fourths of the way opened. Protruding from the bag was a cartridge belt to which was attached a bayonet in a sheath and an open black handcuff case containing a pair of handcuffs. A nightstick was also protruding from the bag. After making these observations, Trooper Mackin placed the defendant under arrest for rape and seized the evidence. Other Massachusetts police officers and New Hampshire police officers arrived at the scene. When the defendant hesitated after being asked whether he would voluntarily return to

Massachusetts the New Hampshire officers arrested him as a fugitive from justice.

1. The hearing on the motion to suppress focused primarily on whether the investigative stop and subsequent arrest met the reasonableness requirements of the Fourth and Fourteenth Amendments. The defendant did not then argue the precise ground that he now raises, that the law of New Hampshire does not authorize a Massachusetts police officer to make an investigative stop in New Hampshire. The Commonwealth persuasively argues that the defendant is precluded from asserting on appeal a ground not properly brought to the attention of the trial judge. See *Commonwealth* v. *Nunes*, 351 Mass. 401, 404-405 (1966); *Kagan* v. *Levenson*, 334 Mass. 100, 107 (1956); *Holbrook* v. *Jackson*, 7 Cush. 136, 154 (1851). But cf. *Commonwealth* v. *Scala*, 380 Mass. 500, 509-510 (1980). However, since the result we reach would not be changed by resolving this issue, we prefer to proceed directly to the merits and put the defendant's constitutional claims to rest.

2. It is the generally accepted rule that the validity of an arrest is determined by the law of the State in which the arrest is made. *United States* v. *DiRe*, 332 U.S. 581, 589 (1948). *United States* v. *Rosse*, 418 F.2d 38 (2d Cir. 1969), cert. denied, 397 U.S. 998 (1970). *United States* v. *Williams*, 314 F.2d 795, 798 (6th Cir. 1963). *People* v. *Clark*, 46 Ill. App. 3d 240, 242 (1977). *State* v. *Goff*, 118 N.H. 724 (1978). We therefore look to the law of New Hampshire to determine the validity of the defendant's arrest.

In *Gullick* v. *Sampson*, 118 N.H. 826 (1978), the same defendant who appeals here contested the validity of his extradition from New Hampshire to Massachusetts. In affirming the defendant's extradition from New Hampshire, the court in dicta stated that the arrest was illegal under New Hampshire's Uniform Law on Interstate Fresh Pursuit, N.H. Rev. Stat. Ann. c. 614 (Supp. 1981).[1] We need not

---

[1] The court stated at 118 N.H. 828: "We agree that the arrest was illegal. At issue are the same principles of State sovereignty that we re-

decide, however, whether the dicta of the New Hampshire court constitute an authoritative interpretation of the New Hampshire Uniform Law on Interstate Fresh Pursuit. Instead, we conclude that the defendant's arrest was legal under New Hampshire law on the ground that Trooper Mackin conducted a valid citizen's arrest.[2]

A number of cases have held that when a police officer makes an arrest outside his jurisdiction, he acts as a private citizen, and the arrest will be held valid if made under circumstances that would justify a citizen in making the arrest. *Commonwealth* v. *Harris,* 11 Mass. App. Ct. 165 (1981), and cases cited at 169. *People* v. *Lyons,* 18 Cal. App. 3d 760 (1971). *State* v. *Chapman,* 376 So. 2d 262 (Fla. App. 1979). *Brown* v. *State,* 217 So. 2d 521 (Miss. 1969). *Nash* v. *State,* 207 So. 2d 104 (Miss. 1968). *State* v. *Goodman,* 449 S.W.2d 656 (Mo. 1970).[3] New Hampshire common law recognizes

cently decided in *State* v. *Goff,* 118 N.H. 724 (1978). We held there that the authority of a New Hampshire State police officer in a foreign jurisdiction is to be determined by the law of that jurisdiction. In the case before us, the initial arrest occurred in New Hampshire by Massachusetts police officers. Under the Uniform Law on Interstate Fresh Pursuit, RSA c. 614, a State police officer from another jurisdiction can enter New Hampshire in fresh pursuit of a person who is believed to be a fleeing felon in order to arrest that person. RSA 614:1. The arresting officer testified that, when he crossed the border in New Hampshire, he did not have reasonable grounds to suspect that the plaintiff was a fleeing felon as required by RSA 614:5. In light of the summary nature of extradition proceedings, however, it is not necessary for us to look behind the determination of probable cause made in Massachusetts. *Clement* [v. *Cox*], 118 N.H. 246 (1978). The admissibility of evidence seized when the plaintiff was illegally arrested in New Hampshire can be properly determined in Massachusetts."

[2] We show no disrespect for principles of comity, even though we do not accept the statement of the Supreme Court of New Hampshire that the defendant's arrest was illegal. Besides being dicta the court's statement did not reach the issue that the arrest might be valid as a citizen's arrest. If any weight is to be given to the court's statement, we think it should be limited to the interpretation of the New Hampshire Uniform Law on Interstate Fresh Pursuit.

[3] Although the Fourth Amendment does not apply to private citizens, it applies to cases such as this, where the arresting citizen is acting as an agent or instrumentality of the police. See *Commonwealth* v. *Mahnke,*

the right of a private citizen to make an arrest upon reasonable grounds to suspect that the person has committed a felony. *State* v. *Holmes,* 48 N.H. 377 (1869). See *Petition of Moebus,* 73 N.H. 351 (1905); *O'Connor* v. *Bucklin,* 59 N.H. 589, 591 (1879). The defendant argues, however, that New Hampshire law does not authorize a private citizen to make an investigative stop.[4] We assume for the purposes of this case that the defendant's contention is correct; nevertheless, we hold that, at the time Trooper Mackin stopped the defendant, he had probable cause to make an arrest, and that it is immaterial whether he subjectively intended to make only an investigative stop.

Probable cause to arrest exists when, at the moment of arrest, the facts and circumstances known to the police officers were sufficient to warrant a person of reasonable caution in believing that the defendant had committed or was committing a crime. *Michigan* v. *DeFillippo,* 443 U.S. 31, 37 (1979). *Beck* v. *Ohio,* 379 U.S. 89, 91 (1964). *State* v. *Lemire,* 121 N.H. 1, 4-5 (1981). The judge who heard the defendant's motion to suppress found that Troopers Johnson, Ellis, and Mackin were engaged in a cooperative effort in the investigation of this incident. We therefore evaluate probable cause on the basis of the collective information of all the officers. See *United States* v. *Matthews,* 615 F.2d 1279, 1287 (10th Cir. 1980); *United States* v. *Ragsdale,* 470 F.2d 24, 33 (5th Cir. 1972); *White* v. *United States,* 448 F.2d 250, 254 (8th Cir. 1971), cert. denied, 405

---

368 Mass. 662, 677 (1975), cert. denied, 425 U.S. 959 (1976). See also *Coolidge* v. *New Hampshire,* 403 U.S. 443, 487-490 (1971); *United States* v. *Seidlitz,* 589 F.2d 152, 158-159 (4th Cir. 1978), cert. denied, 441 U.S. 922 (1979).

[4] See N.H. Rev. Stat. Ann. c. 594:2 (authorizing a peace officer to stop and detain for questioning any person who he has reason to suspect has committed a crime). Cf. *State* v. *Chapman,* 376 So. 2d 262 (Fla. App. 1979) (concepts of a "stop and frisk" do not apply to private persons). At common law, the privilege of a private citizen to detain a person for questioning has been limited to cases involving shopkeepers who reasonably believe that a shoplifter has taken goods from his counter. See generally Restatement (Second) of Torts § 120A (1965).

U.S. 926 (1972). Corporal Ellis, who issued the radio communications to Trooper Mackin, had reliable information that a crime or crimes had been committed in Massachusetts according to a particular modus operandi, and by a person of specific description. Compare *Commonwealth* v. *Antobenedetto*, 366 Mass. 51 (1974) (no evidence adduced to support the reliability of the radio message). See *Whitely* v. *Warden, Wyo. State Penitentiary*, 401 U.S. 560 (1971). The Massachusetts police had information as to many particulars of the New Hampshire crimes which correlated with the Massachusetts episodes. They also had information causing them to suspect the defendant as the perpetrator of the New Hampshire crimes, and they knew that, if in fact the defendant had committed the crimes, the defendant would probably be traveling toward New Hampshire. When the defendant's van was identified (by description and license number) while traveling toward New Hampshire, approximately fifty minutes after the commission of the second rape and robbery, these added facts sufficed to create probable cause. Cf. *Commonwealth* v. *Riggins*, 366 Mass. 81, 87-88 (1974). The fact that Corporal Ellis and Trooper Mackin subjectively intended only to stop the van to conduct an investigation is immaterial. The existence of probable cause to arrest is determined upon an objective view of the facts. *United States* v. *Oates*, 560 F.2d 45, 58 (2d Cir. 1977). *United States* v. *Vital-Padilla*, 500 F.2d 641, 644 (9th Cir. 1974). *Commonwealth* v. *Miller*, 366 Mass. 387, 389-390 (1974). See *State* v. *Lemire, supra* at 5. The fact that only an investigative stop was intended cannot invalidate the arrest if probable cause to arrest existed at the time of the stop. See *State* v. *Lemire, supra.*

We conclude, therefore, that the defendant's arrest was lawful as a citizen's arrest, and the evidence seized pursuant thereto was properly admitted at trial.

*Judgments affirmed.*