**COMMONWEALTH**
**Vs.**
**Brian DORNAN**

**Nos. 03748, 49, 50, 03881**

Superior Court/Essex, ss.
Commonwealth of Massachusetts

**March 31, 1983**

**S. Jane Haggerty, Asst. D.A.**, counsel for plaintiff.
**Jeffrey Denner,** counsel for defendant.

CONSOLIDATED FINDINGS, RULINGS AND ORDERS ON DEFENDANT BRIAN DORNAN'S MOTIONS TO SUPPRESS EVIDENCE (ARREST OF DEFENDANT DECEMBER 4, 1981) AND TO SUPPRESS EVIDENCE SEIZED FROM FOUR LONGFELLOW PLACE, BOSTON, A 1976 BLUE VOLVO, A 1981 OLDSMOBILE CUTLASS, A SAFE DEPOSIT BOX LOCATED AT THE HOME SAVINGS BANK, AND A SAFE DEPOSIT BOX LOCATED AT THE SHAWMUT BANK OF BOSTON

**Introduction**

At the hearing of the above Motions, defendant's Counsel asserted that by his Motions he sought to challenge the sufficiency of search warrants and any affidavits provided in support of the application for the search warrants, pursuant to which certain property was seized. However, in defendant's Motion to Suppress Evidence (Arrest of Defendant December 4, 1981), defendant's Counsel has asserted that "at the time of his arrest, the Commonwealth lacked probable cause to link Mr. Dornan with the alleged conspiracy to import and distribute marijuana with Charles 'Shiner' Stevens and his clients." Apparently reacting to that assertion, counsel for the Commonwealth presented evidence in opposition to defendant's Motions. The findings set out below are based on the evidence presented by the Commonwealth in opposition to defendant's Motions.

Further, in his other Motion, defendant's Counsel appears to assert a ground which goes beyond the four corners of the application for the search warrants, any affidavits in support thereof, and the warrant itself. Specifically, at paragraph numbered 6 of that Motion, defendant's Counsel claims that "the affiant knowingly presented false statements in paragraphs 6 and 14 of his affidavits." When this court pressed defendant's Counsel many times at the hearing of these Motions on the issue of whether or not he would be presenting any evidence in support of those Motions, defendant's Counsel repeatedly informed this court that he would be relying upon the very voluminous papers offered in support of those Motions including affidavits. This court notes these facts in the event of any future request to reconsider any of the findings, rulings and orders made with respect to the above Motions. In sum, and in a few words, defendant Dornan has been provided with more than every opportunity to provide testimonial evidence in support of the above Motions.

**Findings of Fact**

After the hearing on the above Motions from the evidence presented, I find the facts relevant and material to the relief sought by defendant in those Motions as follows.

On October 30, 1981, State Police Trooper Thomas Walsh was on duty between 11:30 p.m. and 7:30 a.m. When he reported to the Barracks to which he was then assigned, he was directed by a desk officer there that he was to assist other troopers to stop a vehicle, but he was not provided with other details nor was he informed why. Later, by radio communication while on patrol, Walsh was advised to disregard that prior direction. At approximately 12:45 a.m., while on Route 128 heading south, Walsh stopped a vehicle which had been speeding at approximately 75-80 miles per hour, and which had been proceeding erratically. Walsh then observed a rifle butt in the rear of the truck which appeared to be partially covered.

When Walsh stopped the vehicle and requested that the driver produce a license and registration, the driver, who is defendant, was not able to produce the registration and he indicated that he had borrowed the vehicle from a friend. At that time, the defendant appeared to be and was intoxicated and Walsh asked him

to step out of the vehicle. When Walsh sought to have the defendant participate in a field sobriety test by walking in a straight line, defendant was not able to do so, and Officer Walsh then determined, and reasonably so, that defendant was intoxicated and arrested him. Along with defendant in the vehicle there was a passenger, one Bogrett, who was also intoxicated. Another trooper had responded and that trooper, at Officer Walsh's request, placed. Bogrett in protective custody. Walsh then called for a wrecker to bring the vehicle defendant had been driving to the Lynnfield State Police Barracks because there was nobody else available and able to drive it away.

When Walsh arrived at the Lynnfield Barracks, and when the vehicle arrived there also, Walsh went to the vehicle and looked into it in order to obtain its registration for the purpose of booking the defendant. A Trooper Ryan also looked into the vehicle in order, pursuant to usual State Police procedures, to conduct an inventory of its contents as well as to check out whether or not what appeared to have been a rifle was in fact a rifle as he had observed it. The reason for the existence of that State Police procedure is that it protects State Police and others who become involved with vehicles which must be brought to the Barracks from subsequent allegations of misappropriating property from such vehicles.

When Walsh looked into the vehicle, he observed an open plastic bag inside an open paper bag on the front passenger side floor. The bag contained, in plain view, a green herbal substance which, on the basis of its smell and Walsh's professional experience, he determined to be marijuana. There was also an open gym bag on the floor. In the back of the vehicle there were three rifles or shotguns. Walsh then spoke with defendant, and after providing him with **Miranda** warnings, defendant indicated that he had borrowed the vehicle and that he had no idea that both the marijuana and the rifles or shotguns were in the vehicle.

On the basis of the facts set out above, I find and rule that Walsh had sufficient probable cause to stop defendant when he was driving on Route 128, to conduct a field sobriety test and to arrest him for driving the vehicle he was operating under the influence of alcoholic beverages. I find and rule further that Walsh had probable cause to look into the vehicle after he had transported it to the Lynnfield Barracks and to seize the marijuana and rifles or shotguns which were in plain view in the vehicle during his inventory of the vehicle.

With respect to another series of events, in August, 1981, Massachusetts State Police Sergeant James Jajuga, in the course of an investigation, contacted the Maine State Police and spoke to a Sergeant Harry Bailey of the Maine State Police who, with drug enforcement agent Michael Cuniff of the federal Drug Enforcement Administration, were members of the Maine State Police anti-smuggling task force and learned of their investigations. Bailey and Cuniff informed Jajuga that on February 18, 1981, defendant Dornan had approached them while they were in an undercover capacity in order to obtain their assistance both to import and to transport several tons of marijuana into Maine. Bailey and Cuniff also informed Jajuga that on April 9, 1981, one Thuet and one Stevens also met with Bailey to inspect boats and possible sites as options to smuggle large quantities of marijuana into Maine.

On August 26, 1981, a person named Bartlett was arrested by the Lynnfield Police after driving off the road and he was found having a large quantity of marijuana in his possession. Also in Bartlett's possession was defendant Dornan's unlisted telephone number where he then resided at Longfellow Place. On October 20, 1981, while under surveillance, defendant Dornan and Thuet were observed together at 22 Cliff Road in Newton with defendant carrying a gym bag. Jajuga learned later that defendant Dornan had been arrested on October 30 for driving under the influence

and that marijuana, ledger books, $300 and a device used to detect signalling devices usually carried by police officers had been seized from the vehicle he had been driving. During the week of November 23, 1981, an informer advised federal Drug Enforcement Administration agents, who in turn informed Jajuga, that the defendant Dornan, Thuet, one Queeney and one Clement were involved in the smuggling and distribution of multi-ton quantities of marijuana and large quantities of hashish. On December 3, 1981, Bailey met with Thuet and Stevens while he was still in an undercover capacity in order to sell to them 500 pounds of marijuana for the amount of $300,000 with delivery to take place on December 4, 1981 in Boston. During the morning of December 4, 1981, Bailey and Stevens spoke by telephone and had extensive discussion relative to the sale of the marijuana. During that conversation, Stevens informed Bailey that he was making arrangements for the receipt of and the payment for the marijuana. At that time, State Police Trooper Walsh observed the defendant Dornan leave the parking lot at Longfellow Place where he then lived, go to the Boston Gardens which is a few blocks away, and make a telephone call. Shortly thereafter, Stevens telephoned Bailey and indicated to him that everything was arranged for the purchase and sale of the marijuana. Bailey was asked to bring a sample of the marijuana to Boston to show it to Stevens, Thuet and others, who would then show Bailey their money, and the deal would be closed. At that point, Jajuga instructed officers who had the defendant Dornan and Thuet under surveillance to arrest them, and that was accomplished at Longfellow Place.

On the basis of the above facts, I find and rule that there was sufficient probable cause to arrest both Dornan and Thuet on December 4, 1981.

## Rulings of Law

Defendant Dornan claims that the affidavits in support of the application for the search warrants were insufficient on the ground that they failed to establish probable cause.[1] Defendant's claim is based upon his contention that in issuing the warrants, the magistrate relied upon deliberate and materially false statements and upon evidence that was obtained in violation of defendant's constitutional rights. Each of the events which defendant claims resulted in the unlawful seizure of evidence and which he asserts the magistrate should not have relied upon will be considered as necessary to determine what could have been properly considered by the magistrate in his probable cause determination.

1. **The October 30, 1981 Arrest.** A warrantless arrest or stop is lawful if the arresting officer, at the moment of the arrest, had within his knowledge facts and circumstances sufficient to warrant a prudent person in believing that the person arrested had committed or was committing an offense. **Commonwealth v. Gullick,** 386 Mass. 278, 283 (1982); **Commonwealth v. Storey,** 378 Mass. 312, 321 (1979). The facts and circumstances within Trooper Walsh's knowledge at the moment his stop of defendant on October 30th were that defendant's truck was proceeding erratically at approximately 75-80 miles per hour. I rule that such information based upon the personal observations of Walsh was sufficient to warrant a prudent person in believing that an offense was being committed.

Further, because defendant, based upon Officer Walsh's personal observations, appeared to be intoxicated and had failed a field sobriety test, I rule that there was ample probable cause to arrest defendant for driving under the influence.

2. **The Search of Defendant Dornan and the Vehicle After the October 30, 1981 Arrest.** The search of defendant's person and seizure of certain

---

[1] The affidavits in support of each of the five search warrants are virtually identical in respect to the information provided therein.

incriminating papers after his arrest constituted a valid search incident to a lawful arrest. See **Commonwealth v. Weiss,** 370 Mass. 416, 421 (1970). Such searches are valid whether or not there is probable cause to believe that the person arrested may have a weapon or is about to destroy evidence. **United States v. Chadwick,** 433 U.S. 1 (1977). A search incident to an arrest is valid if conducted only for the purpose of obtaining helpful information, **United States v. Sheehan,** 583 F.2d 30 (1st Cir. 1978), and after some time has elapsed between the arrest of the defendant and the search. **Commonwealth v. Bowlen,** 351 Mass. 655, 657 (1967).

Regarding the search of the vehicle after it was brought to the Lynnfield Barracks, I rule that the search constituted a lawful inventory search which led to a plain view seizure. When a vehicle is properly brought within the custody or control of the police, an inventory search of the contents of the vehicle is valid in order to secure the owner's property while in police custody, thus protecting the police against claims over lost or stolen property, **South Dakota v. Opperman,** 428 U.S. 364, 369 (1976), and to protect the police and the public from, potential danger. **Cady v. Dambrowski,** 413 U.S. 433, 447 (1973) (since police had reason to believe that vehicle in their custody contained a gun, an inventory search to obtain the gun was lawful). Here, Walsh had three valid reasons for conducting a search of the vehicle: (1) to protect and secure the owner's property; (2) to search for the vehicle's registration which defendant was unable to produce; and (3) to search for a weapon which Walsh had observed in plain view.

Because the initial intrusion into the vehicle was lawful, the seizure of the marijuana, the open gym bag, and the three weapons, each of which were in plain view, was valid. See **Commonwealth v. Accaputo,** (1980) Mass. Adv. Sh. 1009, 1020.

3. **The December 4, 1981 Arrest.** Defendant argues that his arrest on December 4, 1981 was not based upon probable cause and, therefore, the information obtained incident to that arrest was not lawfully before the magistrate. I rule that the facts and circumstances known to Walsh at the moment of his arrest of Dornan and set out in the findings above were sufficient to warrant a person of reasonable caution in believing that defendant had committed or was committing a crime. **Gullick, supra** at 283; **Storey, supra** at 321.

4. **The Affidavits.** Because this court has ruled that the evidence in the affidavits was lawfully before the magistrate, it will now be determined whether the information within the four corners of the affidavits was sufficient to constitute probable cause for the issuance of the search warrants.

Probable cause for the issuance of a search warrant exists where the facts and circumstances alleged in the affidavit are sufficient in themselves to warrant an impartial magistrate in believing that an offense probably has been or is being committed, **Commonwealth v. Snow,** 363 Mass. 778, 784 (1973), and that the items sought are located in the place to be searched. **Commonwealth v. Cefalo,** (1980) Mass. Adv. Sh. 1877, 1886. In assessing an application's sufficiency, reasonable inferences may be drawn by the magistrate from all the information submitted in the affidavits. **Commonwealth v. Anderson,** 362 Mass. 74, 77 (1972). A court must examine an affidavit with a common sense, nontechnical, ungrudging, and positive attitude, **Commonwealth v. Stewart,** 358 Mass. 747, 750 (1971), and a certain leeway should be accorded the after-the-fact review of the sufficiency of the affidavit. **Commonwealth v. Corradino,** 368 Mass. 411, 416 (1975).

The information in the affidavits established the following facts: first, that after defendant's arrest on October 30, 1981, marijuana, weapons, counter-surveillance equipment, and papers

relating to the sale and purchase of drugs were seized from defendant's person and truck. Second, there was found on the person of Bartlett, who was arrested for possession of 25 pounds of marijuana and two large scales, a phone number listed in the name of defendant. Third, that after undercover arrangements were made with Shiner Stevens to have "Jay's outfit" view the purchase money and the marijuana in Boston on December 4, 1981, defendant was seen with "Jay" a/k/a Bogrett, at Longfellow Place and at Causeway Street in Boston. After the arrest of both parties, notes relating to the viewing of the purchase money and the drugs were seized from Bogrett's wallet. Seized from defendant's person were the telephone numbers of Shiner Stevens' brother and the North End Boat Club, where Shiner Stevens conducted numerous drug transactions.

I rule that these facts, and the reasonable inferences drawn therefrom, are sufficient to warrant an impartial magistrate in believing that an offense had been committed and that the items sought were located in the place to be searched.

5. **The False Statements.** Defendant contends that the allegation in paragraph 6 of the affidavit that a toll analysis of the phone of Shiner Stevens showed a call to defendant and that parenthetical in paragraph 14 that the "they" referred to was "Jay" and defendant Dornan constituted material and deliberate false statements.

As to the alleged false statement in paragraph 14, I rule that the statement was reasonably based upon the facts in possession of the affiant and was intended neither to deceive the magistrate nor pad an otherwise inadequate affidavit. See **United States v. Edwards,** 602 F.2d 458 (1st Cir. 1979).

Concerning the statement made in paragraph 6, I rule that assuming without deciding whether the affiant made a deliberate false statement, the statement was not material to a finding of probable cause. That is, putting aside the alleged false statements, the lawful information stated in the affidavit suffices to show probable cause. **United States v. DiMuro,** 540 F.2d 503 (1st Cir. 1976); **United States v. Carpenter,** 403 F. Supp. 361 (D. Mass. 1975).

**Order**

On the basis of the above findings and rulings, it is **ORDERED** that defendant's motions to suppress referred to above be **denied.**

**Paul G. Garrity**
**Associate Justice, Superior Court**