Lowy, J.
The defendants, Miguel Nieves (“Nieves”) and Miguel Melendez (“Melendez”), were indicted on various drug-related offenses, including distribution and sale of Class B and Class D controlled substances, and controlled substance violations on or near school property. These charges resulted from a police seizure of drugs in Nieves’ apartment while officers attempted to execute an arrest warrant for Miguel Perez (“Perez”). Nieves and Melendez move to suppress items seized and statements made contending that the search and seizure was conducted without a warrant and did not meet any exception to the warrant requirements of the U.S. Constitution and the Massachusetts Declaration of Rights. The matter came before the court for eviden-tiary hearings on February 24 and May 20, 2003. For the foregoing reasons, the defendants’ motions are denied.
I. FINDINGS OF FACT
Andover police officers Ota and Carriere were in possession of an arrest warrant for Miguel Perez, 133 Garden Street, Lawrence, MA, based on an earlier crime. On October 4, 2001, the Andover officers contacted the Lawrence police while preparing to serve *262 this warrant. The Lawrence police indicated that they were unavailable, and declined to accompany the Andover officers. Officers Ota and Carriere proceeded to 133 Garden Street and entered the building. After knocking on the door of the first-floor apartment, they asked for Miguel Perez. The person answering the door indicated Miguel Perez lived on the third floor. The officers proceeded to the third-floor apartment, which had no landing in front of it, and knocked on the door. A man answered the door; he was later identified as the defendant Nieves. The officers indicated they were looking for Miguel. Nieves responded that he was Miguel. The officers then asked if they could come in. Nieves answered yes. Upon entering the apartment, directly into the living room, the officers stated they were looking for Miguel Perez. Nieves answered that he was Miguel Nieves, not Miguel Perez, and he provided his driver’s license. Officer Ota returned to the police cruiser to obtain the warrant and confirm the identity by checking for aliases and cross-checking the social security number. Officer Carriere remained in the small apartment.
While waiting in the living room, Officer Carriere observed a green leafy substance on the counter in the kitchen, and he smelled burning marijuana. About the same time, he also heard a noise coming from a room off the living room. At that point, he was alone with Nieves, and was without a police radio. In fear for his safety and without yet knowing whether or not Miguel Perez was present in the apartment, he opened the closed door. Officer Car-riere then observed several men packaging a large quantity of a green leafy substance located on the bed, which he believed to be marijuana. One of these men was later identified as the defendant Miguel Melendez. Officer Ota then returned to the apartment and confirmed that Miguel Nieves was not the arrest warrant individual they were seeking. The two officers secured the premises and the contraband, but not before one man escaped out the back window. The officers placed calls to the Lawrence and the Massachusetts State police, who all arrived within five to ten minutes. No further search was conducted by the Andover police officers.
The Lawrence officers obtained a signed consent from Nieves to search his apartment. Miranda warnings were given, and the defendants were both arrested. Upon searching the apartment, the police found one kilogram of white powdery substance between the bed mattress and the wall, which was determined to be cocaine.
II. RULINGS OF LAW
The burden is on the Commonwealth to show that a warrantless search is reasonable and falls within the narrow class of exceptions to the warrant requirement. Commonwealth v. Phillips, 413 Mass. 50, 55 (1992). A person may consent to a search of his properly without a warrant, so long as his consent is unfettered by coercion, either express or implied, and freely and voluntarily given by a person with the ability and authority to give consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); Commonwealth v. Sanna, 424 Mass. 92, 97 (1997). Additionally, under the plain view doctrine, police can seize items without a warrant if they “are lawfully in a position from which they [can] view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right to access the object. . .” Commonwealth v. Santana, 420 Mass. 205, 211 (1995) (citations omitted).
1. Legality of Police Entry Into Nieves’ Apartment
The defendant challenges the legality of the police entry into his apartment on the grounds that the police entered his dwelling without a search warrant to locate Miguel Perez, the person named in the arrest warrant. Nieves also claims that the entry was illegal because the police entered the premises without probable cause to believe that it was Perez’s residence.[1] These arguments are not persuasive.
Under the Fourth Amendment and the Massachusetts Declaration of Rights, police may make a warrantless entry into a dwelling based on a person’s consent if the consent is shown to be voluntary, unfettered by coercion, and something more than mere acquiescence to a claim of lawful authority. Sanna, 424 Mass. at 97. “The voluntariness of an individual’s consent to a warrantless entry is an issue of fact, and must be examined in the circumstances of the case.” Id. (citations omitted). In this case, Miguel Nieves voluntarily consented to the police officers’ entry into his apartment after they knocked on his apartment door and asked to speak to “Miguel,” thus negating the need for a warrant. Id.
Two Andover police officers, Detective Carriere and Officer Ota, knocked on the door of Nieves’ apartment after a first-floor resident directed them to the third-floor apartment. Nieves answered the officers’ knocks by opening his door, even though he was under no obligation to respond, and invited police inside after they asked if they could enter. Commonwealth v. Rivera, 429 Mass. 620, 624 (1999). Notwithstanding the authority of police to enter the dwelling because they believed it was Perez’s residence, based on the fact they were present serving a valid arrest warrant per G.L.c. 41, 95, Commonwealth v. Grise, 398 Mass. 247, 249 (1986), the police entered Nieves’ apartment based solely on his invitation.[2] As in Commonwealth v. Caputo, the officers entered with the intent to speak to a “defendant, not to search the premises.” 439 Mass. 153, 164 (2003). Thus, because Nieves voluntarily consented to the police entry, neither defendant is entitled to suppress evidence on the grounds that the officers did not have a search warrant or probable cause. Sanna, 424 Mass. at 99.
*263 2.Legality of Continued Police Presence in Nieves’ Apartment
The defendants next argue that evidence must be suppressed because police officers illegally remained in the apartment after they were informed that Nieves was not Miguel Perez. Nieves contends that after he provided police officers with a driver’s license confirming his identity, the officers should have left the apartment and should not have continued to search for Perez. Nieves claims that he consented to a police presence in his apartment, only to confirm his identity and to verify that he was not named in the arrest warrant.
The issue of whether police officers exceed the scope of consent to enter a dwelling is: (1) a question in the first instance for the police officers to whom consent was given; and (2) ultimately a question of whether a person of reasonable caution, in light of all the circumstances, would be warranted in the belief that some limitation was intended by the consent giver. Sanna, 424 Mass. at 98. Contrary to the defendant’s contentions, the evidence shows that the officers did not exceed the scope of Nieves’ consent to enter the apartment and verify his identity.
In the instant case, after Nieves provided police officers with a driver’s license, Officer Ota left the apartment to compare the license to the arrest warrant. During Officer Ota’s brief absence from the apartment, Officer Carriere observed what he suspected was drug contraband on the stove in Nieves’ kitchen and heard noise from another room, all while validly in the apartment. The police were uncertain about whether Miguel Nieves was named in the warrant as an alias for Miguel Perez. The officers acted reasonably in attempting to verify that Nieves was not a suspect, based upon the warrant, the information provided by the unnamed first floor occupant, and Nieves’ statement that he was “Miguel.” Sanna, 424 Mass. at 98. “(T]here was no reasonable basis for the police to infer that the defendant had limited, or withdrawn, his consent for them to be in his house.” Caputo, 439 Mass. at 163. Likewise, based on the totality of the circumstances, a reasonable person could conclude that the officers’ actions did not exceed the scope of Nieves’ consent to enter his apartment and confirm whether he was named in the warrant. Id. This is particularly so where Nieves did not request the police to leave after providing his license. For these reasons, the defendants are not entitled to suppress evidence on the grounds that the police unlawfully remained in Nieves apartment after he provided a driver’s license.
3.Legality of the Opening of Nieves’ Bedroom Door
Nieves contends that evidence must be suppressed because Officer Carriere unlawfully opened the closed door of his bedroom while awaiting confirmation that Nieves was not named in the warrant. This argument is unpersuasive for two reasons.
First, under the Fourth Amendment of the U.S. Constitution, police executing an arrest warrant may lawfully take actions related to the objectives of the authorized intrusion. Wilson v. Layne, 526 U.S. 603, 611 (1999). The scope of the police activity must comply with the terms of the warrant. Id. When police are lawfully in a dwelling to locate a suspect, the permissible scope of their search “must... be as broad as may reasonably be necessary to prevent the dangers that the suspect at large in the house may resist or escape.” Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 299 (1967). Officers thus have the authority to check the dwelling in any place that the defendant may be located in pursuit of serving an arrest warrant. See Commonwealth v. Bui, 419 Mass. 392, 395-96 (1995).
In this case, the police lawfully entered the apartment and could seek Perez in the dwelling because he was named in an arrest warrant, and it was unclear whether Miguel Nieves was, in fact, Miguel Perez, or whether Miguel Perez may be hiding in the apartment. Hayden, 387 U.S. at 299. The warrant for Miguel Perez listed 133 Garden Street, Lawrence as his residence. A first-floor neighbor identified the third-floor apartment as Miguel Perez’s apartment. Thus, the police officers were complying with the objectives of the warrant when they opened the bedroom door to locate Perez, given their belief that he may be hiding in there. Wilson, 526 U.S. at 611. Consequently, the defendant is not entitled to suppress evidence on the grounds that the officers unlawfully opened his bedroom door. Hayden, 387 U.S. at 299.
Additionally, Officer Carriere was alone in the apartment and out of radio contact with Officer Ota at the time he heard noise come from the other room. In the interest of his own safety, he was justified in opening the bedroom door. Commonwealth v. Walker, 370 Mass. 548, 556-58 (1976) (finding police justified in entering the bedroom for their own safety).
4.Legality of Andover Police Jurisdiction to Secure the Premises While Awaiting the Lawrence Police
Police officers may serve arrest warrants anywhere in the Commonwealth, when the warrant is based on crimes that occur in the officers’ own locale of jurisdiction. G.L.c. 41, §95; Commonwealth v. Grise, 398 Mass. 247, 249 (1986). When officers are physically outside of their jurisdiction, they have no authority to act using their police power other than for a few very limited and statutorily prescribed circumstances. Commonwealth v. Kerr, 409 Mass. 284, 286 (1991). One of these exceptions is for fresh pursuit. G.L.c. 41, §98A. Id. at 287. If officers observe or gain information of criminal activity while within their jurisdiction, they may pursue the defendant into another town to effect an arrest. Commonwealth v. Owens, 414 Mass. 595, 599-600 (1993).
When outside of their jurisdiction, officers do, however, have the same authority as private citizens, no more and no less. Commonwealth v. Clairborne, 423 Mass. 275, 280 (1996). Private citizens may arrest one *264 who has committed a felony; there is no private citizen authority to arrest for a misdemeanor. Id. As modified for the police, officers must have “probable cause to believe that a felony had been committed and that the person arrested had committed it.” Id.
Plain view is one of many exceptions to the exclusionary rule, where evidence remains admissible although police did not follow the constructs of the state and federal constitutional rules requiring search warrants. See Commonwealth v. Upton, 394 Mass. 363, 364-65 (1985). Plain view occurs when “police are lawfully in a position from which they view an object” whose “incriminating character is immediately apparent.” Commonwealth v. D'Amour, 428 Mass. 725, 730 (1999). Further, the police must “come across the item inadvertently.” Id. at 731. The exigency exception also overrides the exclusionary rule. When evidence is likely to be destroyed or defendants are likely to escape, the doctrine of exigency allows police to secure the premises in order to prevent such results. Commonwealth v. Martino, 412 Mass. 267, 275-76 (1992); Commonwealth v. Gentile, 437 Mass. 569, 575 (2002).
Officers Ota and Carriere had proper jurisdiction to serve an arrest warrant at the time they were invited into the Garden Street apartment by Nieves, based on their extended statutory jurisdiction and Nieves’ consent. In the process of awaiting confirmation of Nieves’ identity, Officer Carriere inadvertently observed in plain view marijuana on the kitchen counter, from his vantage point in the living room, and smelled the substance burning. Marijuana is an item with inherent incriminating character. Further, Officer Carriere inadvertently viewed the marijuana on the bed upon opening the bedroom door, as discussed above, for his safely and the continued search for the arrest warrant defendant. The two plain views occurred while the officers were lawfully acting with police jurisdiction. No evidence suggests the officers anticipated finding drugs that day. Further, the Andover officers had yet to check the identity of the other individuals present in the apartment. Taking into consideration the Supreme Judicial Court’s interpretation of the plain view doctrine, D'Amour, 428 Mass. at 730-31, once the officers observed the contraband in plain view, any possible lack of jurisdiction was overcome by the doctrines of exigency and fresh pursuit. The officers were justified and authorized to secure the apartment.
Certainly, had the police simply left the apartment after observing the marijuana being packaged in their presence, the defendants may have destroyed or removed the marijuana, or have left the premises. Exigency, common sense, and good police work required the Andover officers to secure the premises in order to prevent the destruction of evidence and the departure of any more defendants.
These facts are also readily interpreted as a fresh pursuit situation. Officer Carriere was rightfully within his statutory jurisdiction when he observed criminal activity. The Andover officers, in essence, pursued the perpetrators of the criminal activity, moving from inside their temporal bubble of statutory jurisdiction, to another arena, albeit as private citizens lacking police power jurisdiction, when they secured the apartment. However, because the plain view and thus the pursuit began when they had valid jurisdiction, they were entitled to continue their pursuit into an area or later point in time where they may have been without formal jurisdiction because their efforts to serve the arrest warrant may have ceased. Their authority was maintained between the two vaiying “temporal jurisdictions” because of the exceptions of plain view, fresh pursuit, and exigency.[3]
One could argue that the police were without jurisdiction to secure the apartment, and were required to walk away from the scene, leaving the defendants and the drugs.[4] This position is premised on the assumption that the officers were immediately able to assess the quantity of marijuana present in the apartment, and thus determine whether they as private citizens were viewing a felony or a misdemeanor, all while one defendant escaped out the back window. The defendants’ position requires an unwarranted interpretation of the constitution. It would be unreasonable to find that officers rightfully performing their duties would be required to walk away from inadvertent discovery of blatant criminal activity. There is no suggestion of police bad faith or fault in this case. The officers would have been derelict in their duties to walk out of Nieves’ apartment without acting. “Where ‘the exclusionary rule does not result in appreciable deterrence, then, clearly, its use ... is unwarranted.’ ” Commonwealth v. Wilkerson, 436 Mass. 137, 142 (2002) (quoting United States v. Janis, 428 U.S. 433, 454 (1976)).
5. Legality of Nieves’ Consent to Search His Apartment
Finally, Nieves argues that evidence must be suppressed because his consent to search was not valid on the grounds that he did not waive his Miranda rights.[5] Under the Fourth Amendment of the U.S. Constitution and the Massachusetts Declaration of Rights, warrantless searches are per se unreasonable, unless they fall within the limited exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357 (1967); Commonwealth v. Forde, 367 Mass. 798, 800 (1975). However, “[a] search conducted with the consent of its subject is free of the strictures of the Fourth Amendment and art. 14." Commonwealth v. Blais, 428 Mass. 294, 298 (1998). When “the Commonwealth relies on consent to justify the lawfulness of a search without a warrant, it bears the burden of proving that the consent was ‘freely and voluntarily’ given.” Commonwealth v. Burgess, 434 Mass. 307, 310 (2001) (citation omitted). “The Commonwealth must show consent unfettered by coercion, express or implied, and also something more than mere acquiescence to a claim of lawful authority.” Id. (internal *265 citations omitted). Voluntariness of consent is a question of fact to be determined in the circumstances of each case. Commonwealth v. Harmond, 376 Mass. 557, 561 (1978) (citation omitted).
Here, the Commonwealth has demonstrated that Nieves freely and voluntarily consented to the search of his apartment. Burgess, 434 Mass. at 310. Uncontradicted testimony shows that the officers explained the provisions of the Consent to Search Form to Nieves, reading each section to him. They also provided the form to him for his review. After providing Nieves with the form, the officers asked Nieves if he understood it. Nieves said “yes” and agreed to the search. He then signed the Consent to Search Form in two places to acknowledge his consent. Although no evidence was presented about whether the police officers informed Nieves of the right not to consent, voluntariness is not automatically negated by the failure to explain the right of a defendant to refuse to consent. Sanna, 424 Mass. at 97-98, n.10.
Moreover, the evidence shows that Nieves fully cooperated with police in the execution of the Perez arrest warrant, thereby demonstrating his consent to search. Commonwealth v. Aguiar, 370 Mass. 490, 496 (1976) (holding that consent vitiating the need for a search warrant may be found in cooperative conduct). Nieves invited the officers into his apartment when questioned about Perez. Although he was in custody at the time he consented to the search, Nieves’ consent was not rendered involuntary given the fact that he actively assisted the police officers. Id. at 497.
Finally, the Commonwealth is not required under the United States Constitution or the Massachusetts Declaration of Rights to give Nieves ‘‘Miranda-type" warnings as a prerequisite to a consent search. Ohio v. Robinette, 519 U.S. 33, 39-40 (1996); Blais, 428 Mass. at 298-99. The U.S. Supreme Court has held that it is “thoroughly impractical” and “unrealistic” for police officers to issue “Miranda-type” warnings on a normal consent search. Robinette, 519 U.S. at 39-40. As noted, under the Fourth Amendment, the test for voluntariness of consent is a question of fact to be determined from all the circumstances of a case. Id. at 40. Here, the prosecution has shown that Nieves’ consent was freely and voluntarily given. Burgess, 434 Mass. at 310. Thus, the defendant is not entitled to suppress evidence because the police failed to issue Miranda-type warnings in light of the totality of the circumstances of this case.
ORDER
For the foregoing reasons, it is therefore ORDERED that the defendants’ motions to suppress evidence are DENIED.

The Court need not reach the issue of whether police officers need “reason to believe” that a suspect is within his residence in order to enter it and execute an arrest warrant, as required by the Fourth Amendment, or whether cognate provisions of the Massachusetts Declaration of Rights require police to satisfy the higher standard of probable cause to enter the dwelling. Payton v. New York, 445 U.S. 573, 603 (1980); Commonwealth v. Rivera, 429 Mass. 620, 623-624 (1999). In this case, Nieves invited the officers into his apartment. With the voluntary consent of a resident, police can enter the dwelling without a warrant. Sanna, 424 Mass. at 97.

Defendants did not challenge the validity of the arrest warrant, nor did they present evidence of unreasonable police actions. Commonwealth v. Dominguez, 57 Mass.App.Ct. 606, 610 (2003) (indicating the defendant carries the burden to show unreasonable police knowledge with a single-versus multi-family dwelling).

It is also important to note, that the officers took the least invasive action possible in securing the apartment. They did not search and they did not arrest. Commonwealth v. Forde, 367 Mass. 798, 803-06 (1975); Commonwealth v. Watkins, 425 Mass. 830, 841-42 (1997) (upholding police entrance with an arrest warrant, where the police conducted a protective sweep and secured the premises while awaiting a search warrant).
Additionally, no evidence was presented suggesting that the Andover police recognized that the amount of marijuana observed by the police officers being packaged was an amount constituting a misdemeanor rather than a felony. Similarly, no evidence suggests that the police had ruled out that none of the individuals in the bedroom was Miguel Perez. Indeed, it may well have been prudent for the Andover police to call the Lawrence police and stabilize the situation prior to continuing their arrest warrant investigation.

Even if one were to find that the Andover officers had no jurisdiction to secure the apartment, the doctrine of inevitable discovery would still apply to the later discovery of the cocaine. “Under the ‘inevitable discovery’ rule, evidence that is the fruit of the poisonous tree is not rendered inadmissible if the government can demonstrate that it would have inevitably discovered the evidence lawfully.” Commonwealth v. Benoit, 382 Mass. 210, 217 (1981).
In adopting a standard stricter than that of the U.S. Supreme Court, Massachusetts requires a two-step analysis of inevitability and of the character of the police misconduct. Commonwealth v. Perrot, 407 Mass. 539, 546 (1990). First, the Commonwealth must prove by a preponderance of the evidence that “once the relevant facts have been proved, that discovery by lawful means was ‘certain to a practical matter. ’ ” Id. at 547 (citation omitted). Second, the court must consider the severity of the constitutional violation by the police. Commonwealth v. O’Connor, 406 Mass. 112, 118 (1989). “Bad faith of the police, shown by such activities as conducting an unlawful search in order to accelerate discovery of the evidence, will be relevant in assessing the severity of any constitutional violation.” Id. The inevitable discovery rule will not be applied to “justify admission of evidence seized in violation of the requirement that a search warrant be obtained, even if it was inevitable that, if sought, a search warrant would have been issued and the evidence would have been found.” Id
In this case, given the level of cooperation demonstrated by the defendants and the short period of time until the Lawrence police arrived, it was inevitable that the secreted cocaine would have been discovered and would not have been destroyed. Further, there is no evidence here of police bad faith or action taken without awaiting a proper warrant. See Commonwealth v. Wilkerson, 436 Mass. 137, 141 (2002) (“When the matter is grounded in police fault, then policy reasons for applying the exclusionary rule become more relevant”).

The Court will not address whether Nieves voluntarily waived his Miranda rights because the defendant freely consented to the search of his apartment irrespective of Miranda.